## LOWRY et al. v. TILE, MANTEL & GRATE ASS'N OF CALIFORNIA et al.

### (Circuit Court, N. D. California. November 13, 1899.)

#### No. 12.698.

1. **MISJOINDER OF PARTIES—WAIVER BY APPEARANCE.**
   Defendants by a general appearance waive the objection of a misjoinder because other defendants are not inhabitants of the district.

2. **GENERAL APPEARANCE.**
   There is a general appearance by a demurrer which does not alone object to the jurisdiction, but goes to the merits of the case.

3. **ANTITRUST LAW—UNLAWFUL COMBINATION.**
   A complaint alleging that members of an association have conspired and combined to raise the prices of tiles, mantels, and grates, to control the output, and to regulate the prices thereof, with the intent to monopolize the trade and commerce between the other states and California in regard thereto, as well as to arbitrarily fix their prices independently of their natural market value, brings the case within the antitrust act of July 2, 1890 (26 Stat. 209).

Action at Law to Recover Damages under the Provisions of Act July 2, 1890 (26 Stat. 209).

Reddy, Campbell & Metson, for plaintiffs.
Linforth & Whitaker, for certain defendants.

MORROW, Circuit Judge. This is an action at law brought to recover damages alleged to have been sustained by plaintiffs by reason of injury to their business caused by the forming of an association by defendants claimed to be within the prohibitory provisions of the act of congress of July 2, 1890, commonly known as the "Sherman Antitrust Act." The amended complaint alleges: That plaintiffs are co-partners doing business under the firm name of Lowry & Daly, citizens of the state of California, and residents of the Northern district of said state. That the Tile, Mantel & Grate Association of California, and the officers and members thereof, have since the ——— day of January, 1898, and do now, constitute an unincorporated organization composed of wholesale dealers in tiles, mantels, and grates, and that they are now, and ever since that day have been, citizens and residents of the city and county of San Francisco, and of the city of Sacramento, and of the city of San José, in the state of California, and of the states set forth hereinafter, and that all said defend-

ants have been since that date, and now are, carrying on business in the state of California, and within the jurisdiction of the Northern district thereof. That the defendants hereinafter named are corporations created and existing under the laws of the respective states set opposite to their names: Columbia Encaustic Tile Company, Indiana; United States Encaustic Tile Works, Indiana; Cambridge Tile Manufacturing Company, Kentucky; Pittsburg Tile Company, Pennsylvania; Trent Tile Works, New Jersey; W. W. Montague & Co., California; Bush & Mallett Company, California; Star Encaustic Tile Company, Limited, Pennsylvania; Mangrum & Otter, California; American Tile Company, Ohio; Providential Tile Works, New Jersey; the John Stock Sons, California. That the defendants the Columbia Encaustic Tile Company, Cambridge Tile Manufacturing Company, the American Tile Company, the Pittsburg Tile Company, the Providential Tile Works, and the Star Encaustic Tile Company, Limited, are, and were at all the times mentioned, manufacturers of tiles in the states set forth, and that the defendants Heavener Meir, the John Stock Sons, W. W. Montague & Co., Bush & Mallett, Bennett & Schutte, and Mangrum & Otter are, and ever since January 1, 1898, have been, engaged in the wholesale and retail business of buying and selling tiles, mantels, and grates in the cities of Sacramento, San Jose, and San Francisco, in this state. That the following cities, with the respective populations placed opposite their names, are each situated in the Northern district of California: San Francisco, 290,000 and upwards; Oakland, 40,000 and upwards; Sacramento, 30,000 and upwards; San Jose, 20,000 and upwards. That in said cities there are a great number of dwelling houses, buildings used for business, trade purposes, and manufactories. That new buildings are being constantly erected, and in their construction large quantities of tiles, mantels, and grates are necessarily used for their safe construction and comfortable occupation. That none of the tiles used about buildings or dwellings are made in the state of California, but are manufactured in Eastern states, and imported thence, and such importations into this state amount to the annual value of $100,000 or thereabouts. That for many years past plaintiffs have been engaged in the wholesale business of dealing in tiles, mantels, and grates, and in conducting this business have purchased these articles from the various corporations defendant, and shipped them to the state of California, and there sold them; that defendants and their associates who are bound by contract with them comprise all the wholesale dealers who handle and import and sell tiles in the cities aforesaid, and, when combined together, can and do absolutely control the price charged for tiles in said cities, by reason of the distance of these cities from any manufacturers or wholesale dealers other than defendants and those combined with them in other states or foreign countries, who do not belong to the said Tile, Mantel & Grate Association of California. The rates of transportation are prohibitory, so that no tiles have been or can be imported from places other than those in which the corporations and above-named persons have manufactories, stock on hand, or warerooms, and all the grates and tiles made and manufactured within reach of the state of Cali-

fornia, where the rate of freight is such that an importation can be made to San Francisco and said other cities at such an amount as to admit of their importation at all, are, and at all times mentioned have been, controlled by the said defendants, or some of them, or those bound by contracts to them. That before the association, combination, and conspiracy hereinafter referred to, defendants were uncombined, and were selling grates, mantels, and tiles on their respective merits, their prices being determined by the law of supply and demand. That in the years 1896 and 1897 there were in San Francisco and the other said cities numerous persons engaged in the wholesale and retail business of selling tiles, and in the placing and laying of them. That defendants, with intent to form a contract, trust, and conspiracy in restraint of trade and commerce between the state of California and the states of Indiana, Kentucky, New Jersey, Pennsylvania, and Ohio, for the purpose of controlling the output and regulating the price of these commodities, and monopolizing the said trade, combined and conspired to monopolize the grate, tile, and mantel importations and trade and commerce from other states to and with the state of California, to the extent of the tiles, grates, and mantels that could be used in the state of California in the erection and construction of dwellings and buildings, and so conspired to raise the price of these commodities in the California market, and for this purpose on or about the ———— day of January, 1898, formed an organization and adopted a constitution and by-laws, which constitution and by-laws are now in effect. That the said constitution and by-laws provided that no sales and deliveries, or contracts for the sale or delivery, or the placing, of tiles, grates, or mantels, will be made by the manufacturers thereof to any person dealing in these commodities, unless such person belong to the said unincorporated association, and shall pay or cause to be paid ———— dollars to that organization, and bind themselves to abide by its constitution and by-laws; that is to say, that no one who is a member of that organization shall sell to, or deal with or deliver to, any person engaged in the business of buying, selling, or placing tiles, grates, or mantels in the cities of San Francisco, Oakland, Sacramento, and San Jose, and other cities in this state, unless such person shall become a member of the said unincorporated organization, and shall agree that in their general business of selling such commodities to the general public they shall sell them at such prices as may be arbitrarily fixed by the said unincorporated association. That, prior to the formation of that organization, plaintiffs were doing a large business in selling tiles, mantels, and grates, and were making an annual profit of about $5,000. That plaintiffs are unable to join the said organization, because, according to its constitution and by-laws, a unanimous vote of the members of the association is required to elect a member thereof, and certain members of that organization are so antagonistic to plaintiffs, by reason of business differences, that they would not allow them to enter the organization; and further, the rules and regulations of the association require that members must keep constantly in stock goods to the value of $3,000, and there are times when plaintiffs' stock does not amount to that value. That, if

plaintiffs join said association, they would be bound to sell their wares at prices arbitrarily fixed by the association, and not at their fair market value. That said association is illegal and void, by virtue of the act of congress approved July 2, 1890, and by joining it plaintiffs would be guilty of a crime under the said act. That, since the formation of said organization, plaintiffs have been unable to purchase tiles, mantels, or grates from any of the defendants, although they have tendered to the defendants the price of the same. That defendants have refused to deliver any tiles, mantels, or grates to them since the organization of said association. That, about the time of the formation of said association, plaintiffs had placed with defendants certain orders for tiles; but these orders were not filled, but were canceled, by the parties with whom they had been placed, for the reason that plaintiffs did not belong to, and would not join, said organization. That, about the time of the formation of the association, plaintiffs had placed orders for tiles with the Columbia Encaustic Tile Company, which canceled plaintiffs' orders because plaintiffs did not belong to the Tile, Mantel & Grate Association. That said organization is within the statute of the 51st congress, passed and approved July 2, 1890, known as "Chapter 647, Supplement to the Revised Statutes at Large of the United States." That, by reason of the monopoly of such association, plaintiffs are damaged in the sum of $10,000. Plaintiffs pray for treble the sum of $10,000, in accordance with the provisions of the above-named act, and for further equitable relief.

To this amended complaint the defendants W. W. Montague & Co., a corporation; the Bush & Mallett Company, a corporation; Mrs. Mary Bennett and John H. Schutte, partners trading as Bennett & Schutte; the John Stock Sons, a corporation; Heavener Meir; Mangrum & Otter, a corporation; and the Tile, Mantel & Grate Association,—filed a demurrer. The grounds of this demurrer are: That the amended complaint does not state facts sufficient to constitute a cause of action against defendants, or any of them. That there is a misjoinder of parties defendant, in that the Columbia Encaustic Tile Company, the United States Encaustic Tile Works, the Cambridge Tile Manufacturing Company, the Pittsburg Tile Company, the Trent Tile Company, and the Star Encaustic Tile Company, Limited, are all improperly made and joined as defendants in this action. That the amended complaint is uncertain, (1) in that it does not appear therefrom whether the plaintiffs were at any of the times mentioned in the amended complaint engaged in interstate commerce; (2) in that it cannot be ascertained therefrom whether the acts of defendants complained of interfere with interstate commerce directly, immediately, or at all; (3) in that it cannot be ascertained therefrom with sufficient certainty whether plaintiffs have been damaged in the sum of $10,000 or at all. It does not appear from the record that the foreign corporations joined as defendants have been served with process, and they have made no appearance.

This action is brought under the provisions of an act of congress dated July 2, 1890, and entitled "An act to protect trade and com-

merce against unlawful restraints and monopolies." 26 Stat. 209. Section 7 of this act provides:

"Any person who shall be injured in his business or property by any other person or corporation, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States, in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the costs of suit including a reasonable attorney's fee."

It is contended by the counsel for defendants that there is a misjoinder of parties defendant in the amended complaint, in that certain corporations organized and doing business in states other than this state have been joined as defendants in this action; such corporations being residents of districts other than this, and not found within this district, so that no service of process can be made upon them, and themselves subjected to the jurisdiction of the court. The allegations of the amended complaint in this respect are as follows:

"All of said defendants have been since that date, and are now, carrying on business in the state of California, and within the jurisdiction of the Northern district thereof."

Defendants' counsel contend that these allegations are not such as to give the court jurisdiction over such defendants as do not reside in this district, and that, as the defendant corporations joined with them reside only in the states in which they have been respectively organized, they can only be sued in their own districts. It is contended by plaintiffs' counsel that the defendants who have demurred are estopped from demurring to the amended complaint upon the ground that some of their co-defendants are being sued in the wrong district, since they have made a general appearance, and by so doing have lost the right to raise the question that there is a misjoinder of parties on these grounds. In the case of Improvement Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401, the action was at law, and the court discussed the effect of a general appearance by a defendant upon a demurrer by the same defendant based upon jurisdictional grounds. In this case the complaint alleged that the plaintiff was incorporated under the laws of New Jersey, and was a citizen of that state, and that all the defendants were citizens and residents of the state of Indiana. "On June 19, 1890, the defendants Gibney, McElwaine, and Wheeler, by their attorney, entered a general appearance, but Gibney neither pleaded nor answered, and the defendant Bartley never appeared or made any defense. On September 19, 1891, McElwaine and Wheeler pleaded in abatement that at the time of the bringing of this action, and ever since, Gibney and Bartley were citizens of the state of Pennsylvania, and not citizens or residents of the state of Indiana, and that therefore the court had no jurisdiction of the case. The plaintiff demurred to this plea as not containing facts sufficient to constitute a cause for the abatement of the action. The plaintiff declining to plead further, but electing to stand upon its demurrer to the plea, the court adjudged that the plaintiff take nothing by its action, and that the defendant recover costs." The case was

taken to the supreme court upon a writ of error. Mr. Justice Gray delivered the opinion of the court, and in the course of that opinion said, at page 220, 160 U. S., page 273, 16 Sup. Ct., and page 402, 40 L. Ed.:

"In Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, this court held that the provision of the act of 1888 as to the district in which a suit between citizens of different states should be brought, required such a suit, in which there was more than one plaintiff or more than one defendant, to be brought in the district in which all the plaintiffs or all the defendants were inhabitants. When there are several defendants, some of whom are, and some of whom are not, inhabitants of the district in which the suit is brought, the question whether those defendants who are inhabitants of the district may take the objection, if the nonresident defendants have not appeared in the suit, has never been decided by this court. Strong reasons might be given for holding that, especially where, as in this case, an action is brought against the principals and sureties on a bond, and one of the principals is a nonresident and does not appear, the defendants who do come in may object at the proper stage of the proceedings to being compelled to answer the suit. But in the present case it is unnecessary to decide that question, because one of the principals and both sureties, being all the defendants who pleaded to the jurisdiction, had entered a general appearance long before they took the objection that the sureties were citizens of another district. Defendants who have appeared generally in the action cannot even object that they were themselves inhabitants of another district, and, of course, cannot object that others of the defendants were such."

The judgment of the circuit court was reversed, and the case remanded, with directions to sustain the demurrer to the plea.

A general appearance, therefore, on the part of these defendants, must be deemed a waiver of the objection of a misjoinder because the other defendants are not inhabitants of this district. Counsel contend that they have not made such a general appearance, but have demurred specially on the ground that certain defendants are improperly joined with them. The terms of the demurrer constitute a sufficient answer to this contention.

The grounds of demurrer are not confined to the jurisdiction of the court, but the merits of the case are involved in the objection that the complaint does not state facts sufficient to constitute a cause of action. In the case of Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942, the question of special appearance was considered. The action was at law, and was brought in the circuit court of the United States for the Western district of Texas. The petition alleged that the defendant was a corporation duly incorporated under the laws of the state of Kentucky, a citizen of the state of Kentucky, and a resident of El Paso county, in the state of Texas; that defendant "was and is engaged in the business of running and propelling cars for the conveyance of freight and passengers over the line of railway extending eastwardly from the city of El Paso, Texas, into and through the counties of El Paso and Presidio, and the city of San Antonio, all of the state of Texas; that the defendant is now doing business as aforesaid, and has an agent for the transaction of its business in the city and county of El Paso, Texas, to wit, W. E. Jessup." The plaintiff resided in the county of Red River, which is in the Eastern district of Texas. Defendant, by leave of court, filed a document desig-

nated as an "answer or demurrer," "for the special purpose, and no other, until the question herein raised is decided, of objecting to the jurisdiction of this court," and demurred and excepted to the petition because, upon the above allegations, "it appears that the suit ought, if maintained at all in the state of Texas, to be brought in the district of the residence of the plaintiff,—that is to say, in the Eastern district of Texas"; and the defendant prayed judgment whether the court had jurisdiction. The court overruled the demurrer. Defendant thereupon answered to the merits, and, judgment being given against it, sued out a writ of error in the United States supreme court on the question of jurisdiction only, under the act of February 25, 1889 (25 Stat. 693, c. 236). Mr. Justice Gray said, at page 206, 146 U. S., page 45, 13 Sup. Ct., and page 944, 36 L. Ed.:

"It may be assumed that the exemption from being sued in any other district might be waived by the corporation by appearing generally or by answering to the merits of the action without first objecting to the jurisdiction. Railway Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Railway Co. v. Cox. 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829. But in the present case there was no such waiver. The want of jurisdiction, being apparent on the face of the petition, might be taken advantage of by demurrer, and no plea in abatement was necessary. Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179. The defendant did file a demurrer, for the special and single purpose of objecting to the jurisdiction; and it was only after that demurrer had been overruled, and the defendant had excepted to the overruling thereof, that an answer to the merits was filed."

The case of Railway Co. v. McBride, 141 U. S. 127, 130, 11 Sup. Ct. 982, 983, 35 L. Ed. 659, cited in Southern Pac. Co. v. Denton, supra, was also an action at law; and the only question involved was what constituted a general appearance, and its effect upon the jurisdiction of that court. Mr. Justice Brewer, delivering the opinion of the court, said:

"Assuming that service of process was made, although the record contains no evidence thereof, and that the defendant did not voluntarily appear, its first appearance was not to raise the question of jurisdiction alone, but also that of the merits of the case. Its demurrer, as appears, was based on three grounds; two referring to the question of jurisdiction, and the third, that the complaint did not state facts sufficient to constitute a cause of action. There was therefore in the first instance a general appearance to the merits. If the case was one of which the court could take jurisdiction, such an appearance waives, not only all defects in the service, but all special privileges of the defendant in respect to the particular court in which the action is brought."

In the case at bar defendants did not file their demurrer "for the special and single purpose of objecting to the jurisdiction," but for the further purpose of attacking the merits of the case upon the facts as stated in the complaint; and this last issue the court is called upon to decide as a material question in controversy, as will appear hereafter. The appearance of defendants demurring in this action must, in view of these authorities, be regarded as a general appearance, and they are therefore prevented from objecting that their co-defendants are improperly joined with them on the ground that they are being sued in the wrong district.

Considering next the ground of demurrer that the amended com-

plaint does not state facts sufficient to constitute a cause of action: The statute under which this action is brought (26 Stat. 209) provides: .

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commence among the several states or with foreign nations, is hereby declared to be illegal. * * *

"Sec. 2. Every person who shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations, shall be deemed guilty of a misdemeanor. * * *

"Sec. 3. Every contract, combination in form of trust or otherwise, or conspiracy in restraint of trade or commerce in any territory of the United States, or the District of Columbia, or in restraint of trade or commerce between any such territory and another, or between any such territory or territories and any state or states or the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states or foreign nations, is hereby declared illegal."

Defendants' counsel rely upon the case of Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300, as supporting their demurrer upon this point. The bill in that case was filed, under the direction of the United States attorney general, by the United States district attorney for the Western district of Missouri. It alleged, among other things, that defendants—

"Have unlawfully entered into a contract, combination, and conspiracy in restraint of trade and commerce among the several states and with foreign nations, in this, to wit: That they have unlawfully agreed, contracted, combined, and conspired to prevent all other persons than members of the Traders' Live Stock Exchange, as aforesaid, from buying and selling cattle upon the Kansas City market, at the Kansas City Stock Yards, as aforesaid; that the commission, firm, person, partnership, or corporation to whom said cattle are consigned at Kansas City, as aforesaid, is not permitted to, and cannot, sell or dispose of said cattle at the Kansas City market, as aforesaid, to any buyer or speculator at the Kansas City Stock Yards, unless said buyer or speculator is a member of the Traders' Live-Stock Exchange, and these defendants, and each of them, unlawfully and oppressively refuse to purchase cattle, or in any manner negotiate or deal with or buy from any commission merchant who shall sell or purchase cattle, from any speculator of the said Kansas City Stock Yards who is not a member of the said Traders' Live-Stock Exchange; that by and through the unlawful agreement, combination, and conspiracy of these defendants, the business and traffic in cattle at the said Kansas City Stock Yards is interfered with, hindered, and restrained, thus entailing extra expense and loss to the owner, and placing an obstruction and embargo on the marketing of cattle shipped from the states and territories aforesaid to the Kansas City Stock Yards."

Mr. Justice Peckham, in the course of the opinion of the court, says:

"The agreement now under discussion differs radically from those of U. S. v. Jellico Mountain Coal & Coke Co. (C. C.) 46 Fed. 432, 12 L. R. A. 753; U. S. v. Coal Dealers' Ass'n (C. C.) 85 Fed. 252; and U. S. v. Addyston Pipe & Steel Co., 29 C. C. A. 141, 85 Fed. 271. The agreement in all of these cases provided for fixing the prices of the articles dealt in by the different companies; being in one case iron pipe for gas, water, sewer, and other purposes, and coal in the other two cases. If it were conceded that these cases were well decided, they differ so materially and radically in their nature and purpose from the case under consideration that they form no basis for its decision. This association does not meddle with prices, and itself does no business. In refusing to recognize any yard trader who is not a member of the exchange, we see no purpose of thereby affecting, or in any manner restraining, interstate commerce, which, if affected at all, can only be in a very

indirect and remote manner. The rule has no direct tendency to diminish or in any way impede or restrain interstate commerce in the cattle dealt in by defendants. There is no tendency, as a result of the rule, directly or indirectly, to restrict the competition among defendants for the class of cattle dealt in by them. Those who are selling the cattle have the market composed of defendants, and also composed of the representative buyers of all the packing houses at Kansas City, and also of the various commission merchants who are constantly buying on orders, and of those who are buying on their own account. This makes a large competition wholly outside of the defendants. The owner of cattle for sale is therefore furnished with a market at which the competition of buyers has a broad effect. All yard traders have the opportunity of becoming members of the exchange, and to thus obtain all the advantages thereof."

The allegations of the amended complaint in the present case are that the members of the Tile, Mantel & Grate Association have conspired and combined to raise the prices of tiles, mantels, and grates, to control the output and to regulate the prices of these commodities, with the intent of monopolizing the trade and commerce between the other states and California in regard to such commodities, as well as to arbitrarily fix their prices independent of their natural market price. It will be seen, therefore, that the case of Anderson v. U. S. cannot be considered as applicable to the case at bar.

The case of U. S. v. Jellico Mountain Coal & Coke Co. (C. C.) 46 Fed. 432, 12 L. R. A. 753, is more in point. The action was brought under the antitrust act against the members of the Nashville Coal Exchange. The purpose of the agreement in that case was to establish the price of coal at Nashville, and to change the same from time to time. Members found guilty of selling coal at a less price than the price fixed by the exchange, either directly or indirectly, were fined 2 cents per bushel and $10 for the first offense, and 4 cents per bushel and $20 for the second offense. Owners or operators of mines were not to sell or ship coal to any persons, firms, or corporations in Nashville who were not members of the exchange, and dealers were not to buy coal from any one but a member of the exchange. The court, commenting upon the agreement of this association of coal dealers, said:

"This clearly indicates the purpose of the association to be to control the price of coal in the Nashville market used in manufacturing and in steamboats whenever it could; that the mines of coal tributary to Nashville were all expected to become members of the exchange, whereupon the prices of coal could be fixed absolutely; and the necessary inference from this declaration and the entire organic structure of the body is that it felt strong enough already to regulate and establish the prices of domestic coal in that market to a large extent, at least, and that this exchange might now monopolize the business of dealing in domestic coal in the Nashville market, and in the future monopolize by and confine to its membership the entire trade in coal at that point. It seems to me that the purposes and intention of the association could hardly have been more successfully framed to fall within the provisions of the act of July 2, 1890, had the object been to organize a combination, the business of which should subject it to the penalties of that statute; and there is no need of authorities to sustain such view of the case."

In the case of U. S. v. Coal Dealers' Ass'n (C. C.) 85 Fed. 252, the bill alleged that defendants comprised all the wholesale dealers handling coal in San Francisco, and that they, together with certain retail dealers, had conspired with intent to monopolize the coal

trade and commerce between British Columbia, Washington, and Oregon, to the extent of the coal used for domestic purposes in the city of San Francisco. It was said by this court in that case:

"But the agreement of the importers and wholesale dealers, which alone gives life and force to the combination, is directed specifically to the maintenance of card rates for certain imported coals, by name; and it is this agreement, and what may be accomplished under it by the combination, that is to be considered, and not what it may be doing at any particular time."

In U. S. v. Addyston Pipe & Steel Co., 54 U. S. App. 723, 29 C. C. A. 141, and 85 Fed. 279, the United States began proceedings in equity against six corporations engaged in the manufacture of cast-iron pipe in localities in Ohio, Kentucky, Alabama, and Tennessee. The bill of complaint charged the defendants with a combination and conspiracy in unlawful restraint of interstate commerce. It appeared that the defendants, who were manufacturers and vendors of cast-iron pipe, entered into a combination to raise the price of pipe for all the states west and south of New York, Pennsylvania, and Virginia, comprising some 36 states in all; and, to carry out this combination, the associated defendants entered into an agreement which provided certain methods of procedure in dealing with the public, whereby competition between themselves was avoided in the territory mentioned. The court, in an able opinion reviewing the whole subject of the law relating to combinations and contracts in restraint of trade, arrived at the conclusion that the association of the defendants was a contract, combination, or conspiracy in restraint of trade, as the terms are to be understood under the act of July 2, 1890. The doctrine of that case is applicable here. The allegations charging conspiracy and combination to raise the price of the commodities in question, and of an agreement by the members of such combination to sell these commodities at such prices as shall be arbitrarily fixed by the combination in question, together with the further allegation that such combination has been made with the intent of monopolizing trade and commerce between California and other states, are sufficient, under these authorities, to bring the case within the operation of the provisions of the Sherman act. Defendants' demurrer upon the ground of the insufficiency of the facts stated to constitute a cause of action cannot, therefore, be sustained.

Defendants also demur on the ground of uncertainty, contending that the complaint fails to show that defendants were engaged in interstate commerce, or that their acts directly or immediately interfered with interstate commerce, or in what manner plaintiffs have been damaged, or at all. Upon consideration, however, this ground of demurrer does not appear to be well founded. The allegations of the complaint are obviously free from uncertainty in these particulars, and this ground of demurrer must therefore be denied. The demurrer of defendants will therefore be overruled.