WHITWELL v. CONTINENTAL TOBACCO CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1903.)

No. 1,902.

1. ANTI-TRUST ACT—WHAT CONTRACTS, COMBINATIONS, OR CONSPIRACIES VIOLATE.

Every contract, combination, or conspiracy, the necessary effect of which is to stifle or to directly and substantially restrict competition in commerce among the states, is in restraint of interstate commerce, and violates section 1 of the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200].

2. SAME—WHAT ACTS, CONTRACTS, AND COMBINATIONS DO NOT VIOLATE.

Acts, contracts, and combinations which promote, or only incidentally or indirectly restrict, competition in commerce among the states, while their main purpose and chief effect are to foster the trade and increase the business of those who make and operate them, are not in restraint of interstate commerce, or violative of section 1 of the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200].

3. SAME—CONSTRUCTION.

The anti-trust act should have a reasonable construction—one which tends to advance the remedy it provides, and to abate the mischief at which it was leveled.

4. SAME—ATTEMPTS TO MONOPOLIZE A PART OF INTERSTATE COMMERCE.

Every attempt to monopolize a part of interstate commerce, the necessary effect of which is to stifle or to directly and substantially restrict competition in commerce among the states, violates section 2 of the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200].

5. SAME.

Attempts to monopolize a part of commerce among the states which promote, or only incidentally or indirectly restrict, competition in interstate commerce, while their main purpose and chief effect are to increase the trade and foster the business of those who make them, were not intended to be, and were not, made illegal or punishable by section·2 of the anti-trust act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], because such attempts are indispensable to the existence of any competition in commerce among the states.

6. SAME—RESTRICTION OF SALES OF GOODS.

A manufacturer, a corporation, and its employé restricted the sales of its products to those who refrained from dealing in the commodities of its competitors by fixing the prices of its goods to those who did not thus refrain so high that their purchase was unprofitable, while it reduced the prices to those who declined to deal in the wares of its competitors so that the purchase of the goods was profitable to them. The plaintiff applied to purchase, but refused to refrain from handling the goods of the corporation's competitors, and sued it for damages caused by the refusal of the defendants to sell their commodities to him at prices which would make it profitable for him to buy them and sell them again. Held, the restriction of their own trade by the defendants to those purchasers who declined to deal in the goods of their competitors was not violative of the anti-trust act.

7. SALES—RESTRICTION—DAMAGES.

The owner of goods may dictate the prices at which he will sell them, and the damages which are caused to an applicant to buy by the refusal of the owner to sell to him at prices which will enable him to resell them at a profit constitute no legal injury, and are not actionable, because they are not the result of any breach of duty or of contract by the owner.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

Dan W. Lawler (Frank Arnold, on brief), for plaintiff in error.
C. A. Severance and Junius Parker (W. W. Fuller, F. B. Kellogg, and R. E. Olds, on the brief), for defendants in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge. This is an action by the plaintiff, Joseph P. Whitwell, to recover treble damages from the Continental. Tobacco Company, a corporation, and from one of its employés, George E. McHie, under the anti-trust act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], on the sole ground that the defendants refused to sell the manufactured products of the tobacco company to him at prices which would enable him to resell them to others at a profit, unless he refrained from buying, selling, or hand-

ling plug chewing tobacco made by independent manufacturers who were competing with the tobacco company for the trade of the country. All the parties to the suit were engaged in interstate commerce, and the products in question were the subjects thereof. The main question which the case presents is, may one engaged in commerce among the states lawfully select his customers, and sell only to those who do not buy or sell the wares of his competitors, or is such a restriction of his own trade by a manufacturer or merchant and his employés a "contract, combination or conspiracy in restraint of trade" or an "attempt to monopolize any part of trade," within the meaning of the act of July 2, 1890, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200] ?

An analysis of the averments of the complaint to which the court below sustained a general demurrer will demonstrate the fact that the crucial question in this case has been correctly stated. The material facts which those averments disclose are these: The plaintiff is a jobber of tobacco, and of the products of tobacco, at St. Paul, Minn. The tobacco company is a manufacturer and merchant, and McHie is its agent and employé. The tobacco company owns and controls most of the valuable and leading brands of plug and chewing tobacco in the United States, and fixes the market prices thereof. The company and its agent, McHie, had long been, and on May 1, 1902, still were, in the practice of selling its goods to jobbers in this way: They allotted to an intending purchaser an amount of its goods which he was required to buy during each succeeding period of four months. This allotment was much in excess of the amount which he would be able to sell during that time. They fixed the prices of the goods comprising the allotment so high that, if the purchaser paid the prices thus fixed, he could not make any profit by buying and selling the commodities. They required each purchaser to refrain from dealing in plug chewing tobaccos made by independent and competing manufacturers. If the purchaser complied with this requirement, they invariably reduced his allotment to the amount he was able to sell, and paid back to him such a percentage of the aggregate price of the goods he bought that the handling of these commodities was by reason of this repayment alone made profitable to him. If the purchaser refused to comply with this requirement, they refused to reduce the amount of his allotment or the prices of his goods, so that the business was unprofitable to him. The plaintiff had long participated in this method of transacting business, had been handling the products of the tobacco company in accordance with it, and had an established business in the purchase of tobacco and its products, and in the sale of them throughout the states of Minnesota, North Dakota, and South Dakota, when on May 1, 1902, the defendants made an allotment to him for the succeeding four months, and offered to furnish their commodities to him in accordance with their established practice. He, however, refused to refrain from handling the goods of independent manufacturers who were competing with the defendants. Thereupon the latter refused to reduce the allotment which they had made to him, or the prices thereof, so that the handling of the goods of the tobacco company would be profitable to the plaintiff, and he did

not purchase, or agree to purchase, their goods. He was unable to procure them elsewhere, and sustained damages in the sum of $280.

No other facts are stated in the complaint. There are, however, allegations that the defendants combined and conspired to regulate and to raise the prices of their goods, and to control the output thereof, with the intent to monopolize trade and commerce among the states of Minnesota and North Dakota and South Dakota; that they combined to arbitrarily fix the prices of their goods, independently of their natural market value, and to refuse to sell them on equal terms to all intending purchasers; and that they did all these things in restraint of trade and commerce among the states. But the only way in which the plaintiff avers that these defendants restrained or attempted to monopolize interstate trade, or disclosed their intent to do so, was by restricting the sale of their own goods to customers who refrained from handling the wares of their competitors by making their sales on the terms which have been stated. The general averments of the intent, purpose, and effect of the acts of the defendants may therefore be laid aside here. They serve no purpose save to foreshadow the argument of counsel relative to the legal effect of the facts which the complaint sets forth. They neither state, nor aid in the statement of, any cause of action, because they disclose no fact, and the only question here is whether the facts stated in the complaint constitute a cause of action. The only facts thus stated are that the tobacco company and its employé refused to make sales of its products to the plaintiff, or to others who desired to purchase, on terms that would be profitable to them, unless they refrained from dealing in the goods of its competitors. Was this act, or the course of dealing which it illustrates, a violation of the anti-trust law of 1890? That law provides:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of commerce among the several states, or with foreign nations, is hereby declared to be illegal.  *  *  *

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states,  *  *  *  shall be deemed guilty of a misdemeanor.  *  *  *"

Under this act, every contract, combination, and conspiracy in restraint of trade among the states is illegal. Every person who engages in any such combination violates this law, and a corporation is a person. Act July 2, 1890, c. 647, §§ 1, 8, 26 Stat. 209, 210 [U. S. Comp. St. 1901, pp. 3200, 3202]. Hence the real question in every case which arises under this law is whether or not the contract, combination, or conspiracy challenged is in restraint of trade among the states. It has now been settled by repeated decisions of the Supreme Court that this question must be tried, not by the intent with which the combination was made, nor by its effect upon traders, producers, or consumers, but by the necessary effect which it has in defeating the purpose of the law. That purpose was to prevent the stifling or substantial restriction of competition, and the test of the legality of a combination under the act which was inspired by this purpose is its direct and necessary effect upon competition in commerce among

the states. If its necessary effect is to stifle or to directly and substantially restrict free competition, it is a contract, combination, or conspiracy in restraint of trade, and it falls under the ban of the law. U. S. v. Trans-Missouri Freight Association, 166 U. S. 290, 339, 340, 342, 17 Sup. Ct. 540, 41 L. Ed. 1007; Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 234, 20 Sup. Ct. 96, 44 L. Ed. 136; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 576, 577, 19 Sup. Ct. 25, 43 L. Ed. 259; U. S. v. Northern Securities Co. (C. C.) 120 Fed. 721, 725; U. S. v. Jellico Mountain Coal & Coke Co. (C. C.) 46 Fed. 432, 12 L. R. A. 753; Lowry v. Tile, Mantel & Grate Ass'n (C. C.) 98 Fed. 817, 826; Id. (C. C.) 106 Fed. 40, 45; U. S. v. Addyston Pipe & Steel Co., 85 Fed. 271, 294, 29 C. C. A. 141, 163, 46 L. R. A. 122; U. S. v. Coal Dealers' Ass'n (C. C.) 85 Fed. 252; Chesapeake & O. Fuel Co. v. U. S., 115 Fed. 610, 619, 53 C. C. A. 256, 265; Gibbs v. McNeeley, 118 Fed. 120, 55 C. C. A. 70, 60 L. R. A. 152; Brown v. Jacobs Pharmacy Co. (Ga.) 41 S. E. 553, 57 L. R. A. 547; Arnot v. Coal Co., 68 N. Y. 558, 23 Am. Rep. 190; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173, 8 Am. Rep. 159.

If, on the other hand, it promotes or but incidentally or indirectly restricts competition, while its main purpose and chief effect are to foster the trade and to increase the business of those who make and operate it, then it is not a contract, combination, or conspiracy in restraint of trade, within the true interpretation of this act, and it is not subject to its denunciation. Hopkins v. U. S., 171 U. S. 578, 592, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v. U. S., 171 U. S. 604, 616, 19 Sup. Ct. 50, 43 L. Ed. 300; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 568, 19 Sup. Ct. 25, 43 L. Ed. 259; Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 245, 20 Sup. Ct. 96, 44 L. Ed. 136; U. S. Chemical Co. v. Provident Chemical Co. (C. C.) 64 Fed. 946; California Steam Navigation Co. v. Wright, 6 Cal. 258, 65 Am. Dec. 511; Smalley v. Greene, 52 Iowa, 241, 3 N. W. 78, 35 Am. Rep. 267; Schwalm v. Holmes, 49 Cal. 665; In re Greene (C. C.) 52 Fed. 104, 115, 116, 117; In re Grice (C. C.) 79 Fed. 627, 644; Allgeyer v. Louisiana, 165 U. S. 578, 589, 7 Sup. Ct. 427, 41 L. Ed. 832; State v. Goodwill (W. Va.) 10 S. E. 285, 286, 6 L. R. A. 621, 25 Am. St. Rep. 863; People v. Gillson, 109 N. Y. 389, 398, 17 N. E. 343, 4 Am. St. Rep. 465; Butchers' Union Co. v. Crescent City, etc., Co., 111 U. S. 746, 755, 4 Sup. Ct. 652, 28 L. Ed. 585; Welch v. Phelps & Bigelow Windmill Co. (Tex. Sup.) 36 S. W. 71; Commonwealth v. Grinstead (Ky.) 63 S. W. 427; Walsh v. Dwight (Sup.) 58 N. Y. Supp. 91, 93; Brown v. Rounsavell, 78 Ill. 589; Noyes on Intercorporate Relations, § 388, p. 563.

In Hopkins v. U. S., 171 U. S. 592, 19 Sup. Ct. 45, 43 L. Ed. 290, the Supreme Court said:

"The contract condemned by the statute is one whose direct and immediate effect is a restraint upon that kind of trade or commerce which is interstate. * * * To treat as condemned by the act all agreements under which, as a result, the cost of conducting an interstate commercial business may be increased, would enlarge the application of the act far beyond the fair meaning of the language used. There must be some direct and immediate effect upon interstate commerce in order to come within the act."

And at page 600, 171 U. S., page 48, 19 Sup. Ct., 43 L. Ed. 290, it said:

"The act of Congress must have a reasonable construction, or else there would scarcely be an agreement or contract among business men that could not be said to have, indirectly or remotely, some bearing upon interstate commerce, and possibly to restrain it. We have no idea that the act covers or was intended to cover such kinds of agreements."

In Anderson v. U. S., 171 U. S. 616, 19 Sup. Ct. 54, 43 L. Ed. 300, the court quoted this sentence from the opinion in Smith v. Alabama, 124 U. S. 465, 473, 8 Sup. Ct. 564, 566, 31 L. Ed. 508, "There are many cases, however, where the acknowledged powers of a state may be exerted and applied in such a manner as to affect foreign or interstate commerce without being intended to operate as commercial regulations," and then said:

"The same is true as to certain kinds of agreements entered into between persons engaged in the same business for the direct and bona fide purpose of properly and reasonably regulating the conduct of their business among themselves and with the public. If an agreement of that nature, while apt and proper for the purpose thus intended, should possibly, though only indirectly and unintentionally, affect interstate trade or commerce, in that event we think the agreement would be good. Otherwise there is scarcely an agreement among men which has interstate or foreign commerce for its subject that may not remotely be said to in some obscure way affect that commerce, and to be therefore void."

In U. S. v. Joint Traffic Ass'n, 171 U. S. 568, 19 Sup. Ct. 31, 43 L. Ed. 259, the Supreme Court, after reviewing and affirming the case of Hopkins v. U. S. and the rule which has been quoted from that case, declared:

"An agreement entered into for the purpose of promoting the legitimate business of an individual or corporation, with no purpose to thereby affect or restrain interstate commerce, and which does not directly restrain such commerce, is not, as we think, covered by the act, although the agreement may indirectly and remotely affect that commerce. * * * To suppose, as is assumed by counsel, that the effect of the decision in the Trans-Missouri Case is to render illegal most business contracts or combinations, however indispensable and necessary they may be, because, as they assert, they all restrain trade in some remote and indirect degree, is to make a most violent assumption, and one not called for or justified by the decision mentioned, or by any other decision of this court."

The right of each competitor to fix the prices of the commodities which he offers for sale, and to dictate the terms upon which he will dispose of them, is indispensable to the very existence of competition. Strike down or stipulate away that right, and competition is not only restricted, but destroyed. Hence agreements of competing railroad companies to intrust their power to fix rates of transportation to the same man or body of men (U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259; U. S. v. Northern Securities Co. [C. C.] 120 Fed. 721), and contracts of competitors in the production or sale of merchantable commodities to deprive each competitor of the right to fix the prices of his own goods, the terms of the sale, or the customers to whom he shall dispose of them, and either to fix these prices, terms, and customers by the agreement of

the competitors, or to intrust the power to dictate them to the same man or body of men (U. S. v. Jellico Mountain Coal & Coke Co. [C. C.] 46 Fed. 432, 12 L. R. A. 753; U. S. v. Coal Dealers' Ass'n [C. C.] 85 Fed. 252; Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; U. S. v. Addyston Pipe & Steel Co., 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122; Chesapeake & O. Fuel Co. v. U. S., 115 Fed. 610, 53 C. C. A. 250; Gibbs v. McNeeley, 118 Fed. 120, 55 C. C. A. 70, 60 L. R. A. 152; Lowry v. Tile, Mantel & Grate Ass'n [C. C.] 98 Fed. 817; Id. [C. C.] 106 Fed. 40), necessarily have the effect either to stifle competition entirely, or to directly and substantially restrict it, because such contracts deprive the rivals in trade of their best means of instituting and maintaining competition between themselves.

In the contract, combination, or conspiracy which is charged against the defendants in this case there is nothing of this character. The tobacco company is a manufacturer and trader, and McHie is its employé. Conceding, for the purpose of the argument only, but not deciding, that there may be a contract, combination, or conspiracy in restraint of trade between an employer and his employé, no such contract, combination, or conspiracy between them can be a violation of this law unless it is in restraint of interstate commerce; and the only combination charged against the defendants is their combination to make sales of the commodities of the tobacco company profitable to purchasers to those persons only who refrain from dealing in the wares of their competitors. The two defendants in this case have never been and never intended to be competitors. There has never been any competition, actual or possible, between them, and hence no competition between them is or can be restrained by their combination to conduct the trade of the tobacco company. The contract, combination, or conspiracy charged against them did not restrict competition between them and the independent manufacturers or dealers who, according to the complaint, were their competitors, because it left the latter free to select their purchasers and to fix the prices of their goods and the terms at which they would dispose of them to all intending purchasers.

The tobacco company and its competitors were not dealing in articles of prime necessity, like corn and coal, nor were they rendering public or quasi public service, like railroad and gas corporations. Each of them, therefore, had the right to refuse to sell its commodities at any price. Each had the right to fix the prices at which it would dispose of them, and the terms upon which it would contract to sell them. Each of them had the right to determine with what persons it would make its contracts of sale. In re Greene (C. C.) 52 Fed. 104, 115; In re Grice (C. C.) 79 Fed. 627, 644; Walsh v. Dwight (Sup.) 58 N. Y. Supp. 91, 93; Brown v. Rounsavell, 78 Ill. 589; Commonwealth v. Grinstead (Ky.) 63 S. W. 427; Allgeyer v. Louisiana, 165 U. S. 578, 589, 17 Sup. Ct. 427, 41 L. Ed. 832. There is nothing in the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], which deprived any of these competitors of these rights. If there had been, the law itself would have destroyed competition more effectually than any contracts or combi-

nations of persons or of corporations could possibly have stifled it. The exercise of these undoubted rights is essential to the very existence of free competition, and so long as their exercise by any person or corporation in no way deprives competitors of the same rights, or restricts them in the use of these rights, it is difficult to perceive how their exercise can constitute any restriction upon competition or any restraint upon interstate trade.

The acts of the defendant which are alleged by the complaint in this action to constitute an unlawful restraint upon interstate commerce are nothing more than the lawful exercise of these unquestioned rights which are indispensable to the existence of competition or to the conduct of trade. The tobacco company and its employé fixed the prices of its commodities so high that the plaintiff could not profitably buy them. This was no restriction upon free competition, because it left the rivals of the company free to sell their competing commodities at any price which they elected to charge for them. It would have been no violation of the law under consideration if the tobacco company and its employé had combined to refuse to sell any of its commodities at any price, and to retire from the business in which they were engaged entirely. Much less could it be a violation of this act for them to fix their prices too high for profitable investment by the plaintiff.

The tobacco company and its employé sold its product to customers who refrained from dealing in the goods of its competitors at prices which rendered their purchases profitable. But there was nc restriction upon competition here, because this act left the rivals of the tobacco company free to sell their competing commodities to all other purchasers than those who bought of the defendants, and free to compete for sales to the customers of the tobacco company by offering to them goods at lower prices or on better terms than they secured from that company. The tobacco company and its employé were not required, like competitors engaged in public or quasi public service, to sell to all applicants who sought to buy, or to sell to all intending purchasers at the same prices. They had the right to select their customers, to sell and to refuse to sell to whomsoever they chose, and to fix different prices for sales of the same commodities to different persons. In the exercise of this right they selected those persons who would refrain from handling the goods of their competitors as their customers, by selling their products to them at lower prices than they offered them to others. There was nothing in this selection, or in the means employed to effect it, that was either illegal or immoral. It had no necessary effect to directly and substantially restrict free competition in any of the products of tobacco, and it did not unlawfully restrain interstate commerce, because it in no way restricted the exercise of the rights of the competitors of the tobacco company to fix the prices of their goods and the terms of their sales of similar products according to the dictates of their respective wills.

It is contended, however, that this selection by the defendants of customers who refrained from selling the goods of their competitors violated section 2 of the anti-trust act, because it was an

"attempt to monopolize * * * part of the trade or commerce among the several states." It is admitted that the practice of the defendants was not only an attempt, but a successful attempt, to monopolize a part of this commerce. But is every attempt to monopolize any part of interstate commerce made unlawful and punishable by section 2 of the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]? If so, no interstate commerce has ever been lawfully conducted since that act became a law, because every sale and every transportation of an article which is the subject of interstate commerce is a successful attempt to monopolize that part of this commerce which concerns that sale or transportation. An attempt by each competitor to monopolize a part of interstate commerce is the very root of all competition therein. Eradicate it, and competition necessarily ceases—dies. Every person engaged in interstate commerce necessarily attempts to draw to himself, and to exclude others from, a part of that trade; and, if he may not do this, he may not compete with his rivals, all other persons and corporations must cease to secure for themselves any part of the commerce among the states, and some single corporation or person must be permitted to receive and control it all in one huge monopoly. The purpose of the act of July 2, 1890, was, however, to prevent the stifling of competition, not to destroy it or to foster monopoly, and any construction of any of its provisions which would give it such an effect is unreasonable and inconsistent with the object and spirit of the law. It is an interpretation which fosters the mischief it was passed to remedy, and destroys the remedy provided to abate the evil, while a sound construction would tend to abate the mischief and to promote the remedy. It cannot, therefore, be the true meaning of the second section of this law that every attempt to monopolize any part of interstate commerce is illegal. The act must, as the Supreme Court has twice declared (Hopkins v. U. S., 171 U. S. 578, 600, 19 Sup. Ct. 40, 43 L. Ed. 290; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 568, 19 Sup. Ct. 25, 43 L. Ed. 259), have a reasonable construction. The purpose of the second section is the same as that of the first—to prevent the restriction of competition—and the two sections ought to receive similar interpretations. The Supreme Court has declared that the true construction of the first section is that no contract, combination, or conspiracy is denounced by it unless its necessary effect is to directly and substantially restrict competition in commerce among the states. By a parity of reasoning, the correct interpretation of the second section must be that no attempt to monopolize a part of commerce among the states is made illegal or punishable by the provisions of that section unless the necessary effect of that attempt is to directly and substantially restrict commerce among the states. The acts of the defendants had no such effect. They evidenced nothing but the legitimate efforts of traders to secure for themselves as large a part of interstate trade as possible, while they left their competitors free to do the same. It was not—it could not have been—the purpose or the effect of the second section of this law to prohibit or to punish the customary and universal attempts of all manufacturers, merchants,

and traders engaged in interstate commerce to monopolize a fair share of it in the necessary conduct and desired enlargement of their trade, while their attempts leave their competitors free to make successful endeavors of the same kind. The acts of the defendants were of this nature, and they did not violate the second section of the law. An attempt to monopolize a part of interstate commerce, the necessary effect of which is to stifle or to directly and substantially restrict competition in commerce among the states, violates the second section of this act. But an attempt to monopolize a part of interstate commerce which promotes, or but indirectly or incidentally restricts, competition therein, while its main purpose and chief effect are to increase the trade and foster the business of those who make it, was not intended to be made, and was not made, illegal by the second section of the act under consideration, because such attempts are indispensable to the existence of any competition in commerce among the states.

There is another reason why the complaint in this action fails to state facts sufficient to constitute a cause of action: The sole cause of the damages claimed in it is shown to be the refusal of the defendants to sell their goods to the plaintiff at prices which would enable him to resell them with a profit. Now, no act or omission of a party is actionable, no act or omission of a person causes legal injury to another, unless it is either a breach of a contract with, or of a duty to, him. The damages from other acts or omissions form a part of that damnum absque injuria for which no action can be maintained or recovery had in the courts. The defendants had not agreed to sell their goods to the plaintiff at prices which would make their purchase profitable to him, so that the damages he suffered did not result from any breach of any contract with him. They were not caused by the breach of any legal duty to the plaintiff, for the defendants owed him no duty to sell their products to him at any price—much less, at prices so low that he could realize a profit by selling them again to others. The complaint therefore fails to show that any legal injury or actionable damages were inflicted upon the plaintiff by the acts of the defendants and the judgment below is affirmed.