## CITY OF TITUSVILLE v. J. W. BRENNAN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF CRAWFORD COUNTY.

Argued April 28, 1891—Decided October 5, 1891.

[To be reported.]

1. A city ordinance, enacted by legislative authority, forbidding all persons to solicit orders for goods, books, etc., from house to house within the city, without first obtaining a license so to do from the mayor, paying therefor certain fees, and imposing a penalty for its violation, is a valid exercise of the police power of the state.

2. Such an ordinance, when equal and uniform in its operation, without discrimination against goods produced in other states, or between citizens of the different states, as applied to the solicitation of orders for goods to be shipped from another state, does not violate the inter-state commerce clause of the national constitution.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 121 July Term 1890, Sup. Ct.; court below, No. 26 September Term 1889, C. P

To the number and term stated of the court below, there was entered by appeal of the defendant from the judgment of the city recorder of the city of Titusville, an action brought by said city against J. W. Brennan, to recover a penalty for the violation of a city ordinance.

Certain testimony, certified by the city recorder as taken before him, and a deposition of J. A. Shepard, taken before a commissioner at Chicago, having been placed on file, it was agreed by counsel in writing, that the facts appearing in the testimony on the record were "the facts in the case, and that the cause should be submitted to the court as upon a case stated, and argued without a jury." Subsequently the following case stated, setting forth the agreed facts, was placed on file:

"1. J. A. Shepard is a manufacturer of picture frames and maker of portraits, residing in Chicago, in the state of Illinois, of which state he is a citizen, and in which city he has his manufactory and place of business.

Statement of Facts.

" 2. In the prosecution of said business he employs agents, who, under his direction, solicit orders for pictures and picture frames, in the state of Pennsylvania and other states of the Union, by going personally to residents and citizens of said state of Pennsylvania, and other states, and exhibiting samples of his pictures and frames; going, where necessary, from house to house in said state of Pennsylvania and other states.

" 3. The defendant, J. W. Brennan, was an agent of the said J. A. Shepard, employed by him to travel and solicit orders for pictures and frames in the manner stated, upon a salary and also upon commission upon the amount of his sales, at the time of his arrest, May 25, 1889, upon a warrant issued by the authorities of the city of Titusville, in the state of Pennsylvania.

" 4. Upon receiving orders for pictures and picture frames, the agents of the said J. A. Shepard forwarded the same to him at Chicago, in the state of Illinois, where the same were made and from there shipped by said J. A. Shepard to the purchasers in Titusville, in the state of Pennsylvania, by railroad, freight, and express; and the price of said goods was collected and forwarded by the express companies, and sometimes by the agents, to said Shepard, at Chicago, in the state of Illinois. J. W. Brennan, the agent employed by J. A. Shepard, was engaged in conducting the business in the manner stated at the time of his arrest, May 25, 1889. The said J. W. Brennan, at the time of his arrest and before, had not been otherwise employed than as stated, and was acting solely for the said Shepard.

" 5. The city of Titusville had enacted an ordinance, in force at the date of the arrest of said J. W. Brennan, which, in the twelfth section thereof, provides in words and figures as follows:

" ' That all persons canvassing or soliciting within said city orders for goods, books, paintings, wares or merchandise of any kind, or persons delivering such articles under orders so obtained or solicited, shall be required to procure from the mayor a license to transact said business, and shall pay to the said treasurer therefor the following sums, according to the time for which said license shall be granted, viz.: For one day, one dollar and fifty cents; one week, five dollars; three months,

ten dollars; one year, twenty-five dollars; provided, that the provisions of this ordinance shall not apply to persons selling by sample to manufacturers or licensed merchants, or dealers residing or doing business in said city.'

" And the said ordinance further provides in the eighteenth section thereof as follows: ' That any person or persons fail-. ing to obtain a license as required by this ordinance shall, upon conviction thereof before any magistrate, alderman or justice of the peace of said city, forfeit and pay a fine not ex-' ceeding one hundred dollars, nor less than the amount required for a license to such person or persons, together with twenty per cent added as a penalty, with costs of suit, and in default of payment thereof shall undergo a confinement in the city or county prison for a period not exceeding ninety days, or perform hard labor on the streets or elsewhere in said city, not exceeding such period.'

" 6. At the time of his arrest the defendant Brennan, was not and had not been selling by sample to manufacturers or licensed merchants or dealers residing in said city of Titusville, and was not within the proviso of the twelfth section of said ordinance relating to such excepted persons.

" 7. The defendant, J. W. Brennan, at the time of his arrest, had not obtained a license as required by said ordinance, and had not paid to the treasurer of the city of Titusville the license fee provided by said ordinance.

" 8. The defendant was arrested, tried, convicted and sentenced to pay a fine of twenty-five dollars and costs of suit, under said ordinance, on the twenty-ninth day of May, 1889, before W. M. Dame, city recorder of the city of Titusville.

" If the court should be of opinion, upon the facts stated, that the defendant, J. W. Brennan, was liable to take out a license and pay the license fee provided by said ordinance, then judgment to be entered for the plaintiff, the city of Titusville, for twenty-five dollars and costs of suit. If the court should be of opinion that said Brennan was not so liable, then judgment to be entered for the defendant, with costs of suit."

. After argument, the court, HENDERSON, P., J. citing Warren Bor. v. Geer, 117 Pa. 207, and adjudging that the defendant was guilty of hawking and peddling in the city of Titusville without a license, entered judgment for the plaintiff, on the case

Arguments.

stated, for twenty-five dollars and costs of suit.   Thereupon, the defendant took this appeal, specifying that the court erred in entering judgment for the plaintiff upon the facts agreed upon in the case stated, shown by the evidence, and found by the court.

*Mr. Roger Sherman* (with him *Mr. Samuel Grumbine*), for the appellant:

We do not admit that there is any hawking or peddling in this case.   The facts agreed upon do not show it.

Commerce between the citizens of different states cannot be prohibited, burdened, taxed, hampered or controlled by any law of a state, or by a municipality deriving its legislative powers solely from a state government.   Until the sale has been completed in the state to which the article has been imported, and it has thereby become mingled in the common mass of property within that state, no action of the state or its municipalities can interfere with the importation and sale of goods brought from another state : Leisy v. Hardin, 135 U. S. 100; Robbins v. Shelby Taxing Dist., 120 U. S. 497.   The courts of Pennsylvania have not held to the contrary.   In Warren Bor. v Geer, 117 Pa. 207, the question of inter-state commerce was not raised or alluded to.   In Commonwealth v. Gardner, 133 Pa. 284, the defendant was a mere peddler.   The case at bar, though in some respects stronger, is precisely like Robbins v. Shelby Taxing Dist., supra, followed in Rothermel v. Meyerle, 136 Pa. 250; and the provisions of the ordinance were an indirect tax upon Mr. Shepard's business and property : Wilson v. Missouri, 91 U. S. 175; Walling v. Michigan, 116 U. S. 446.

*Mr. George A. Chase*, for the appellee :

The plaintiff, having accepted the act of May 23, 1874, P. L. 230, was a city of the third class : Reading City v. Savage, 124 Pa. 328.   Under § 20 of that act, it had power to enact the ordinance in question, and the act of May 17, 1883, P. L. 31, is an implied legislative recognition of such power.   The fee required by the ordinance to be paid, is not a tax but a license fee, and therefore cannot be a regulation of commerce : Cooley on Taxation, 386 ; Cooley on Const. Lim., 202; License Tax Cases, 5 Wall. 471 ; Osborne v. Mobile, 16 Wall. 479;

Ward v. Maryland, 12 Wall. 418; Boston v. Schaffer, 9 Pick. 415; Dillon on Mun. Corp., §§ 115, 357; Tenney v. Lenz, 16 Wis. 298. A canvasser from house to house is on the same footing with a hawker and peddler: Warren Bor. v. Geer, 117 Pa. 207; and laws against peddling violate no constitutional right: Commonwealth v. Gardner, 133 Pa. 284. If, as is conceded, the citizen should be protected from the peddler, a fortiori should he be protected from the canvasser, who does not exhibit the wares themselves before sale.

OPINION, MR. JUSTICE WILLIAMS:

There are two questions presented by this record. The first is, whether the court below was correct in finding as a fact that the defendant was a peddler. The other is whether, as a matter of law, the defendant is engaged in inter-state commerce, and is under the protection of the national government. If the defendant is a peddler, the law is settled in this state that he is not above the obligation to conform to the requirements of the laws of the state regulating the business of peddling. The legislature has pronounced his business to be injurious in tendency, and has forbidden any one to engage in it, except under certain regulations, intended to bring such person under the notice of the local authorities, and afford some little security for his good behavior. These regulations have been made in the exercise of the police power, to protect the public from fraud and violence, and they are constitutional and valid: Commonwealth v. Gardner, 133 Pa. 284.

But what is the defendant's business, as gathered from the facts appearing in the case stated? He certainly is not an importer, or a wholesale dealer supplying the trade in this state, from a source of supply beyond the state lines, in original or unbroken packages. He is not a "drummer," or traveling agent, acting as an intermediary between the importer or the wholesaler, and the local trade. Although he carries a few articles on his back or in his wagon, he would hardly ask us to hold that he was engaged in inter-state transportation. He comes into this state, according to the case stated, in order that he may here engage in the business of going from house to house to sell frames and pictures for a dealer who resides in another state. He hunts his customers in their own homes.

To the inmates of the homes into which he intrudes himself, he exhibits what he alleges to be a sample of the goods he is prepared to supply. The only apparent difference between him and the ordinary pack-peddler is that the peddler produces the precise article he offers for sale, and delivers it to the purchaser on the spot, while the defendant produces from his pack a sample. The customer buys on his assurance that the article will be like it, and the article is subsequently delivered by some itinerant, or by express, if it is delivered at all. There is in each case the same intrusive domiciliary visitation, the same relentless personal pursuit of a purchaser, the same practiced and persistent itinerant salesman adroitly pressing his wares on the attention of those who neither need nor wish for them, but who are unable to resist the wiles or penetrate the deceptions practiced upon them. The business of both is, in general character, the same. Whether the difference in mode of delivery should distinguish the one from the other is, in this case, a matter of no consequence whatever.

The ordinance under which this suit was brought is not directed against peddlers by name, but against a particular method of making sales of goods. It forbids any person, whether a citizen of this or any state, to engage in the business of canvassing or soliciting within the city of Titusville, for orders for goods, books, paintings, wares, or merchandise of any kind, without first obtaining a license from the mayor for that purpose. It does not discriminate against citizens of other states, or goods grown or manufactured in other states. It does not wholly prohibit the exercise of any trade or business. It regulates a particular business in such a manner as to bring those who engage in it under the notice, and, so far as possible, under the supervision, of the police authorities of the city. Whether the defendant is a peddler, is therefore not the question to be settled. It is whether the defendant is engaged in the business described in the ordinance. If he is, and the agreed facts show clearly that he is, then he must obey it, or show that it is not binding on him. We do not understand that he denies the power of the city to pass such an ordinance, upon the authority of any of our own cases. The case of Warren Borough v. Geer, 117 Pa. 207, involved the validity of an ordinance drawn in almost the identical words found in this

Opinion of the Court.

one.   The court below held that the borough had not power to pass such an ordinance, because it interfered with the exercise of a common right.   This court held otherwise, and distinctly asserted the power of the borough to make, and the duty of the courts to enforce the ordinance.   But it is urged that the United States courts have held another doctrine, and that we should put ourselves in harmony with the law as held by them. We recognize the duty to which our attention is thus called, and shall discharge it with great pleasure wherever we find ourselves in conflict with the decisions of the Supreme Court of the United States upon this or any other subject.   We are thus brought to consider the so-called " federal question ; " the question whether the man who sells ready made clothing, pinchbeck jewelry, picture frames, or other articles, from house to house, by personal solicitation addressed to one whom he has brought to bay in the privacy of his or her own home, is engaged in inter-state commerce, and therefore superior to the police power of the states.

We shall not undertake a definition of inter-state commerce. It is, perhaps, too early to attempt it; but the Supreme Court of the United States has provided us with abundant authority upon the real question we have to consider, which is, whether the business of the defendant is subject to the police power.   In Beer Co. v. Massachusetts, 97 U. S. 25, that court laid down the broad proposition that " all rights are held subject to the police power of the state."   In the course of a very satisfactory discussion of the subject by the learned justice delivering the opinion of the court this language is employed: " Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals.   The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, salus populi suprema lex."   In Mugler v. Kansas, 123 U. S. 623, a law which did not regulate, but absolutely prohibited the manufacture and sale of liquors in Kansas, was sustained as a valid exercise of the police power.

Opinion of the Court.

To the same effect is Foster v. Kansas, 112 U. S. 201.   Equally conclusive upon this point are the oleomargarine cases.   This state forbade both the manufacture and sale of that commodity, except under restrictions which were destructive to the business.   We held the law valid as an exercise of the police power, and on appeal the Supreme Court of the United States affirmed the decision: [Powell v. Pennsylvania, 127 U. S. 678; Walker v. Pennsylvania, 127 U. S. 699.]   The fact that the article the manufacture and sale of which is regulated or prohibited is made under the authority of letters-patent granted by the United States, does not prevent the exercise of the police power of the states.   In Patterson v. Kentucky, 97 U. S. 501, this question was raised, and it was held that letters-patent confer no new or independent right of sale, but secure an exclusive right in the discovery to the inventor or his representative. This right is incorporeal, but " the use of the tangible property that comes into existence by the application of the discovery is not beyond the control of state legislation."   On the other hand, it was distinctly held in Patterson v. Kentucky " that the right which the patentee or his assignee possesses in the property created by the application of a patented discovery, must be enjoyed subject to the complete and salutary power, with which the states have never parted, of so defining and regulating the sale and use of property within their respective limits as to afford protection to the many against the injurious conduct of the few."   In Webber v. Virginia, 103 U. S. 344, it was said by Mr. Justice FIELD, delivering the opinion of the court, that " the patent for a dynamite powder does not prevent the state from prescribing the conditions of its manufacture, storage and sale, so as to protect the community from the danger of explosion." But, while the existence of the police power is thus clearly recognized by the courts of the United States, it must be exercised by means of laws that are equal and uniform in their operation. It must not be made use of as a means for discriminating between citizens of the different states.   If it is, it loses its police character, and becomes an unconstitutional trade regulation. Thus, the state of Missouri passed a law prohibiting the sale of goods grown, or produced, or manufactured outside of that state, without a license.   To sell the same goods grown, produced, or manufactured within the state, no license was required.   This

Opinion of the Court.

law was held to be void, because it was designed to operate against the citizens of other states and in favor of the citizens of Missouri: Welton v. Missouri, 91 U. S. 275. When the burden imposed is equal without regard to citizenship, similar laws have been upheld: Coe v. Errol, 116 U. S. 517. If the defendant was an importer of frames, there could be no doubt of his right to ship them in original bales or packages into the state, and in that condition to sell them. There is just as little doubt of his right to ship into the state one frame, for there is no law of the state which prohibits his sale of a single frame. What the law is aimed at, is not the sale of frames at wholesale or at retail, but personal solicitation from house to house by canvassers, who, like peddlers, are here to-day and gone to-morrow; whose flippant representations cannot be stopped, and whose frauds cannot be punished, unless they are brought under the notice and to some extent under the control of the local authorities.

What trades need to be restricted and forbidden to all who have not obtained a license, is purely a legislative question. The sale of liquors, the keeping of a hotel, the running of a cab, the keeping of a lottery, the sale of lottery tickets, the practice of medicine, the manufacture of oleomargarine, peddling from house to house, and many other kinds of business have been the subject of regulation, restriction, or prohibition by an exercise of the police power of the several states. Where the courts have interfered in such cases, it has been, not to prevent the exercise, but to prevent the abuse of the police power, and to see that its hand was laid impartially, and without discrimination between states, on the evil to be corrected. Whether the solicitation from house to house by itinerant vendors or canvassers is an evil to be suppressed or reduced in its proportions by appropriate legislation, is, under ordinary circumstances, as we have said, a legislative question. If it was for us to determine, a glance at our own cases would determine it. The books are full of cases arising out of the efforts of those who have been defrauded to recover their money, or to be relieved from their bonds or notes given under the influence of a bald fraud or wheedled out of them under pretence that they were signing a receipt, an order, a promise to act as agent, or the like. There is probably not a county

Opinion of the Court.

in the commonwealth into whose courts the victims of the frauds of traveling canvassers for Morus Multicaulis trees, patent churns, hay-forks, washing-machines, self-hooking or self-unhooking whiffletrees, and a hundred more equally worthless things, have not come by petition to open judgment, or by affidavit of defence to an action, seeking relief. It is the same story. A well-dressed, plausible stranger, with flattery and promise of enormous gains, induces some honest but inexperienced man to sign a paper promising to exhibit some worthless article left with him to his neighbors, or to pay for it at a small price, when he has sold it at a large one, or the like, and goes his way. Not long after, some other stranger presents to the astonished victim his promissory note for one, or two, or five hundred dollars, and demands payment. It next turns up in the hands of some note-shaver, and then litigation begins. The loss to industrious, well-meaning people by these practices, reaches many thousands of dollars every year. It goes to support in idleness a class of swindlers who should be in prison. The subject is as fairly within the scope of police legislation as cheating by false pretences, or larceny by a bailee. We should as soon expect the thief, who stole goods in one state to be sold in another, to be protected under the inter-state commerce powers of the general government, as that the traveling cheats who live by drawing the blood of the hard-working but too-confiding farmers and mechanics, should be so protected. It may be that the defendant is honest, and sells a good frame for an honest price. There are, no doubt, some honest peddlers and canvassers, worthy men and women, who are needy, and find this a convenient way to earn money. The trouble in such cases is that they are in a business that men and women who are not honest employ as a means of swindling; and that the business is therefore properly put under some regulations and restrictions, that seem to them, and that in their cases may really be, unnecessary and burdensome. If they choose to embark in the sale of strong drink, or in the sale of goods as peddlers, or as canvassers, or of oleomargarine, they must take notice of the restrictions laid upon the business they select, and comply with them.

The judgment is affirmed.