LOWRY et al. v. TILE, MANTEL & GRATE ASS'N OF CALIFORNIA et al.

(Circuit Court, N. D. California.   December 26, 1900.)

No. 12,698.

MONOPOLIES—ANTI-TRUST ACT—COMBINATION IN RESTRAINT OF INTERSTATE COMMERCE.

The Tile, Mantel & Grate Association of California was organized for the purpose, as declared in its constitution and the preamble thereto, of uniting "all acceptable dealers" in tiles, fireplace fixtures, and mantels in San Francisco and vicinity (within a radius of 200 miles), and all American manufacturers of tiles and fireplace fixtures. Its constitution and by-

laws provided that its active members should consist of dealers in such articles in San Francisco and vicinity, carrying a stock of a stated value, who should be elected to membership, each of whom should pay an entrance fee and annual dues, and the nonresident members should embrace all manufacturers throughout the United States who signed the constitution and paid the entrance fee. They provided that no dealer and active member should purchase from any manufacturer or his agent who was not a member of the association, nor sell any unset tiles to any person not a member for less than the list price, and that no manufacturer who was a member should sell his products to any dealer who was not a member. *Held*, that such association was illegal and in violation of sections 1 and 2 of the anti-trust act of July 2, 1890, being a combination in restraint of trade and commerce among the states, by imposing a tax on such commerce between its members, to the extent of the membership fees and dues, and an attempt to monopolize a part of the trade in the articles named between the manufacturers in other states and the dealers in San Francisco, which, in operation, did effect such monopoly, and that under section 7 of such act such association and its members were liable in treble damages to a dealer, not a member of the combination, whose business was injured thereby.

Action at Law to Recover Treble Damages under the Anti-Trust Act.

Campbell & Metson, for plaintiffs.
Walter H. Linforth and P. F. Dunne, for defendants.

MORROW, Circuit Judge (charging jury). This is an action at law brought to recover damages alleged to have been sustained by the plaintiffs by reason of injury to their business as dealers in tiles and fireplace fixtures, caused by the forming of an association by the defendants as dealers in such articles, and which association, the plaintiffs claim, is within the prohibitory provisions of the act of congress of July 2, 1890, commonly known as the "Sherman Anti-Trust Act." That act provides, among other things, as follows:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states or with foreign nations, is hereby declared to be illegal. * * *

"Sec. 2. Every person who shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or foreign nations, shall be deemed guilty of a misdemeanor. * * *"

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

You will observe that the things forbidden and declared to be unlawful by the act are: First, every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states; and, second, the act of monopolizing, or attempting to monopolize, or combining or conspiring to monopolize, any part of the trade or commerce among the several states. The charge against the defendants, under these prohibitions, is the organization of an association called the Tile, Mantel & Grate Association of California, under an agreement and combination in restraint of trade and commerce. The printed document

introduced in evidence, and entitled, "The Constitution and By-Laws of the Tile, Mantel & Grate Association of California," shows that this association was organized on July 7, 1898, and that the constitution and by-laws were adopted on July 14, 1898. Under the title of "Preamble and Resolutions" the objects of the association are declared to be "to unite all acceptable dealers in tiles, fireplace fixtures, and mantels in San Francisco and vicinity (within a radius of two hundred miles), and all American manufacturers of tiles, and, by frequent interchange of ideas, advance the interests and promote the mutual welfare of its members." Article 1 of the constitution provides as follows concerning membership in the association:

"Section 1. Any individual, corporation, or firm engaged or contemplating engaging in the tile, mantel, and grate business in San Francisco, or within a radius of two hundred miles thereof (not manufacturers), having an established business, and carrying not less than $3,000 worth of stock, and having been proposed by a member in good standing, and elected, shall, after having signed the constitution and by-laws governing said association, and upon the payment of an entrance fee as hereinafter provided, enjoy all the privileges of membership.

"Sec. 2. All associated and individual manufacturers of tiles and fireplace fixtures through the United States may become nonresident members of this association upon the payment of an entrance fee as hereinafter provided, and after having signed the constitution and by-laws governing said association."

Article 2 provides as follows concerning fees and dues:

"Section 1. The initiation fee of this association shall be, for active members twenty-five dollars, and for non-resident members ten dollars, which amounts must accompany each application for membership.

"Sec. 2. Each active member of the association shall pay ten dollars per year as dues, payable in advance on the third Monday in August of each year. No dues shall be charged against nonresident members."

Article 6 makes provision for amendments to the constitution, as follows:

"All proposed alterations or amendments to this constitution shall be submitted in writing at a regular meeting, and no action thereon shall be taken until the next succeeding regular meeting. Due notice of such alterations or amendments shall be mailed to each member at least one week prior to the meeting at which action is to be taken thereon, and such alterations or amendments must receive the approval of two-thirds of the active members of the association."

The document introduced in evidence as the constitution and by-laws of the association contains the provisions which have been quoted, and there is no evidence in the document itself of any amendment thereof. But there is testimony to the effect that that part of article 1 of the constitution limiting the qualification of membership to those persons engaged in the tile, mantel, and grate business in San Francisco, having an established business, and carrying not less than $3,000 worth of stock, has not been enforced, as to the requirement that the member shall have a stock of goods of the value of $3,000. There is also testimony to the effect that the provision of article 2 relating to the fees and dues, and fixing the initiation fee for active members at $25, has been changed to provide that the initiation fee for such membership shall be $10.

The real purpose and object of the association appears to be declared in sections 7 and 8 of the by-laws. Section 7 provides that:

"No dealer and active member of this association shall purchase directly or indirectly any tile or fireplace fixtures from any manufacturer, or resident or traveling agent of any manufacturer, not a member of this association, neither shall they sell or dispose of, directly or indirectly, any unset tile for less than list prices to any person or persons not a member of this association, under penalty of expulsion from the association."

Section 8 provides as follows:

"Manufacturers of tile or fireplace fixtures, or resident or traveling agents of manufacturers, selling or disposing, directly or indirectly, their products or wares to any person or persons not members of the Tile, Mantel & Grate Association of California, shall forfeit their membership in the association."

The uncontroverted evidence in this case shows that the active members of the association consist of a number of dealers in tiles, mantels, and grates in San Francisco, and that they are not manufacturers of any of these articles; that the nonresident members of the association consist of a number of manufacturers of tiles and fireplace fixtures situated in different parts of the United States outside of California. The plaintiffs were not members of the association, and have not been at any time during its existence. Is it the apparent purpose and the natural and direct consequence of this provision of the constitution and by-laws of the Tile, Mantel & Grate Association to restrain trade and commerce between the dealers in tiles, mantels, and grates in San Francisco and the manufacturers of such articles in the Eastern States? Or do these provisions operate in such a way that the members of the association have monopolized or have attempted to monopolize any part of the trade or commerce in these commodities between the manufacturers in the East and the dealers in San Francisco? The purpose of the organization, as declared in the preamble and in section 2 of article 1 of the constitution, was to embrace "all American manufacturers" of tiles and fireplace fixtures, as nonresident members, and the "acceptable dealers" in tiles, fireplace fixtures, and mantels in San Francisco and vicinity (within a radius of 200 miles) as the active resident members. It does not appear that the declared purpose of the association has actually been accomplished, in the completeness of its membership. Not all American manufacturers of tiles and fireplace fixtures have become nonresident members. Whether all "acceptable dealers" in San Francisco have become members is not entirely clear, nor is it certain what constitutes an "acceptable member." But the natural effect and necessary consequence of the agreement and combination, so far as completed and actually enforced, is to limit the San Francisco dealer who is a member of the association in his purchase of tiles and fireplace fixtures to those manufacturers in the United States who are nonresident members of the association. The San Francisco dealer who has become a member of this association cannot purchase tiles and fireplace fixtures from any outside manufacturer except under penalty of forfeiting his membership in the association, and the manufacturer belonging to the association as a nonresident member cannot sell to any dealer in San Francisco who is not a member of the association, except under the same penalty of forfeiture of membership. If all the manufacturers of tiles and fireplace fixtures in the United States should

become members of the association, then no dealer in tiles or fireplace fixtures not a member of the association could carry on his business in San Francisco, because there would be no manufacturer of those articles from whom he could purchase the goods; and as he could not purchase from another dealer in San Francisco who, as a member of the association, is entitled to buy from the Eastern manufacturer, except at list prices for unset tiles, he could not compete with other dealers, these list prices being so high. He would thus be practically debarred from continuing his business. On the other hand, if all the dealers in San Francisco should prove to be "acceptable members" of the association, and not all the manufacturers of tiles and fireplace fixtures in the United States should become nonresident members, such manufacturers remaining out of the organization would be deprived of all customers in San Francisco, because no dealer in San Francisco could purchase tiles from such a manufacturer except under penalty of forfeiture of his membership in the association. In other words, the Eastern manufacturer who becomes a member of this association is restricted in his selling market to members of the association in San Francisco, and the San Francisco dealer who is a member of the association is restricted in his purchasing market to manufacturers who are members of the association. But this is not all. The Eastern manufacturer who is not a member of the association is also restricted in his selling market to the dealers in San Francisco who are not members of the association, and the dealers in San Francisco who are not members of the association are also restricted in their purchasing market to those manufacturers who are not members of the association. It will be said, however, that all manufacturers of tiles and fireplace fixtures in the United States may become members of the association. But upon what terms? The manufacturer must apply for and obtain membership in the association, and pay a fee of $10, and, in order that the San Francisco dealer may have the privilege of purchasing tiles and fireplace fixtures from the manufacturers who are members of the association, he must first prove himself to be an "acceptable member" to the other members of the association; and, if he finds himself to be an "acceptable member," he must pay a fee of $10, and thereafter must continue to pay annual dues in the sum of $10.

It has been held that an ordinance of a municipal corporation requiring persons or firms soliciting orders on behalf of manufacturers of goods to take out a license and pay a tax is an exercise of the taxing power, and, when enforced against a person or firm soliciting orders for a manufacturer of goods in another state, it imposes a tax upon and is a regulation of interstate commerce, in violation of the provisions of the constitution of the United States.

In Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694, a statute of Tennessee declared that all drummers and all persons not having a regularly licensed house of business in the taxing district, offering for sale or selling goods therein by sample, should be required to pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege. Robbins was engaged in soliciting in the city of Memphis, Tenn., the sale of goods for a Cincinnati

firm, exhibiting samples for the purpose of securing orders for the goods. He had no license, and was prosecuted and convicted for a violation of the statute. The statute made no discrimination between those who represented business houses out of the state and those who represented like houses within the state. There was, therefore, no element of discrimination in the case. But, notwithstanding this equality of the tax upon all dealers, the conviction was set aside by the supreme court of the United States on the ground that, whatever the state might see fit to enact with reference to a license tax upon those who acted as drummers for houses within the state, it could not impose upon those who acted as drummers for houses outside of the state any burden by way of a license tax, for the reason that such persons were engaged in interstate commerce, which must be left free from any restrictions or impositions whatever. Negotiations in the conduct of interstate commerce could not be taxed by the state, or by a municipal corporation under its authority. .

In Corson v. Maryland, 120 U. S. 502, 7 Sup. Ct. 655, 30 L. Ed. 699, the same question arose with respect to a provision of the Code of Maryland, and the same doctrine declared as in the preceding case.

In Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368, a statute of the state of Texas required any commercial traveler, drummer, salesman, or solicitor of trade, by sample or otherwise, to pay an annual occupation tax of $35. This statute was declared to be unconstitutional, and the case of Robbins v. Taxing Dist. was expressly affirmed, to meet the vigorous assault made by the court of appeals of Texas upon the doctrine of that case.

In Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637, an agent of a firm doing business in the city of Baltimore solicited orders in the District of Columbia without having taken out a license there as required by an act of the legislative assembly of that District. The supreme court held that this law was invalid, as construed to include the business of an agent soliciting orders for a business house located outside the District.

In Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719, an order of the city of Titusville provided "that all persons canvassing or soliciting within said city orders for goods, books, paintings, wares or merchandise of any kind, or persons delivering such articles under orders so obtained or solicited, shall be required to procure from the mayor a license to transact said business, and shall pay to the said treasurer therefor the following sums, according to the time for which said license shall be granted," etc. The facts of the case were these: One Shephard was a manufacturer of picture frames and maker of portraits, residing in Chicago, in the state of Illinois, in which city he had his manufactory and place of business. The defendant, Brennan, was an agent of Shephard, employed by him to travel and solicit orders for said pictures and frames. Upon receiving orders for such goods, Brennan forwarded the same to Shephard, at Chicago, where the goods were made, and from there shipped to the purchasers, in Titusville, in the

state of Pennsylvania, by railroad, freight and express; and the price of the goods was collected and forwarded to Shephard, sometimes by the express company, and at other times by the agent of Shephard. Brennan was engaged in conducting the business in the manner stated at the time of ,his arrest, without having obtained a license as required by the municipal ordinance. He was convicted, and sentenced to pay a fine of $25 and costs. From that judgment he appealed to the supreme court of the state, where the judgment was affirmed; the court holding that the ordinance was enacted in the exercise of the police power of the state. City of Titusville v. Brennan, 143 Pa. St. 642, 22 Atl. 893, 14 L. R. A. 100. Brennan thereupon sued out a writ of error to the supreme court of the United States. The whole question was again reviewed by that court, and all the previous cases in that court relating to the subject carefully considered. The court declared that commerce between the citizens of the several states must be absolutely free from restraint. The court said:

"It must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the state without the assent of congress, and that the silence of congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free."

In Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, the supreme court held that a state statute prohibiting the sale of intoxicating liquors, except for certain purposes and under license from a county court, was unconstitutional and void when applied to a sale by an importer of liquors brought from another state in the original packages, because the operation of the law was repugnant to the power of congress to regulate commerce among the several states. The court, in passing upon the question, said:

"The power vested in congress 'to regulate commerce with foreign nations and among the several states and with the Indian tribes' is the power to prescribe the rule by which that commerce is to be governed, and is a power complete in itself, acknowledging no limitations other than those prescribed in the constitution. It is co-extensive with the subject on which it acts, and cannot be stopped at the external boundary of a state, but must enter its interior, and must be capable of authorizing the disposition of those articles which it introduces, so that they may become mingled with the common mass of property within the territory entered."

And further, to make this limitation on state authority over interstate commerce more clear, the court said:

"It is only after the importation is completed, and the property imported has mingled with and become a part of the general property of the state, that its regulations can act upon it, except so far as may be necessary to insure safety in the disposition of the import until thus mingled."

In the case of United States v. Coal Dealers' Ass'n (C. C.) 85 Fed. 252, this court, referring to the case just quoted from, said:

"If a law of a state regulating the sale of intoxicating liquors, so as to prohibit their sale except for certain purposes and under license from a county court, is unconstitutional and void when applied to a sale by an importer of liquors brought from another state in the original packages, because the law in that relation is in restraint of trade and commerce 'among the several states,' what shall be said of the constitution and by-laws of the Coal Dealers' Asso-

ciation, and the agreement of that association with the wholesale dealers respecting the sale of imported coal in San Francisco under the anti-trust act? If one is in restraint of commerce, is not the other?"

In United States v. Addyston Pipe & Steel Co., 29 C. C. A. 141, 85 Fed. 271, 54 U. S. App. 723, 767, 46 L. R. A. 122, Judge Taft considered the effect of such state statutes in the same relation, and said:

"If, then, the soliciting of orders for, and the sale of, goods in one state, to be delivered from another state, is interstate commerce in its strictest and highest sense,—such that the states are excluded by the federal constitution from a right to regulate or tax the same,—it seems clear that contracts in restraint of such solicitations, negotiations, and sales are contracts in restraint of interstate commerce."

These observations appear to the court to be applicable to the effect of the constitution and by-laws of the Tile, Mantel & Grate Association of California involved in this case. If an ordinance of San Francisco imposing a tax of $10 upon a solicitor who should seek orders for tiles and fireplace fixtures for an Eastern manufacturer would be contrary to law, because a restriction upon interstate commerce, then a like fee and the conditions of membership imposed by this organization upon Eastern manufacturers for the privilege of selling to San Francisco dealers who are members of the association is also a restriction upon interstate commerce, and would for the same reason be contrary to law.

This brings us to the question as to the effect this organization had upon the price of tiles in this market. Mr. W. B. Webster, the secretary and treasurer of the Tile, Mantel & Grate Association of California, testified as follows, on cross-examination:

"Q. After the formation of the corporation, and the adoption of the list price of the American Tile Company by your association, that did raise the price of tile in this market, did it not? You can answer that easy. A. Yes, sir; it raised the price. The Eastern factories raised the price also on us. Q. The Eastern factories raised the price on you? A. Yes, sir; the price was raised twice since that time on us; that is, not the list, but the discount for orders. They are less to-day than they were at that time. Q. That is, the factories from whom you buy? A. Yes, sir; and other factories that notified us of the raise. Q. Did you not state to your counsel that the price had been practically the same for the same character of goods by all the factories? A. From the time of the society up to the present time. Q. Before the formation of the society up to the present time? A. No, sir. Q. You did not so state? A. I did not understand the question, if I did, because it is a known fact that the prices have been raised three or four times. Q. The prices, then, since this formation, have been raised? A. Yes, sir."

As was said by the supreme court of the United States in Addyston Pipe & Steel Co. v. United States, 175 U. S. 246, 20 Sup. Ct. 96, 44 L. Ed. 149:

"Any combination among dealers in that kind of commodities, which in its direct and immediate effect forecloses all competition, and enhances the purchase price for which such commodity would otherwise be delivered at its destination in another state, would be one in restraint of trade or commerce among the states."

Under these conditions, the dealing in tiles and fireplace fixtures between the manufacturing members of the association in the East and the dealers in San Francisco, also members of the association,

is in effect a monopoly of at least a part of the trade and commerce between California and the Eastern states in those articles; and this monopoly, excluding as it does the outside manufacturer and the outside dealer, except upon conditions, is also in restraint of trade and commerce between the several states. The uncontroverted testimony fully supports this practical operation of the agreement and combination, as disclosed by the constitution and by-laws of the association, in whatever light it may be considered. It follows, therefore, that the court is called upon to instruct you that, under the law, the members of this organization have, in violation of law, entered into a contract and combination in restraint of trade and commerce, and that they have attempted to monopolize and have monopolized a part of the trade and commerce between the manufacturers in the East and the dealers in San Francisco in the article of tiles.

Under these instructions, there is left for your consideration the single question of damages; and, under the provisions of the statute, if you find that the plaintiffs have been injured in their business by reason of this unlawful combination and association of the defendants, you will find for the plaintiffs in such a sum as shall be equivalent to and represent the actual damages sustained by the plaintiffs. It is for the court, in executing the provisions of the statute in entering judgment upon the verdict (if you shall find for the plaintiffs), to treble the amount of the damages; that is to say, any verdict rendered by you, and upon which a judgment will be entered by the court, will be multiplied by three, and a judgment entered for such treble damages. Your verdict will, however, be limited to the actual damages which the evidence shows the plaintiffs have sustained by reason of the acts of the defendants in violation of the act of congress. The sole question, then, as to damages, in this case, relates to any injury which the plaintiffs may have sustained in their business by reason of the association in question. It is not enough, in an action of this kind, which is one at law, for the plaintiffs to establish the existence of an association which comes within the inhibition of the act of congress. Plaintiffs must go still further, and the burden of proof is upon them to show some real and actual damage to their business by reason of such an association. There is no duty imposed by the law upon the association, even if within the statute, to show that its acts have not worked injury to the business of plaintiffs. On the contrary, the duty and burden of proving damage to their business is imposed by law upon the plaintiffs, and, unless they prove this damage to their business by a preponderance of evidence, the verdict must be for the defendants. Mere speculation as to the possible profits of a mercantile business, in the absence of evidence directed to such conditions, cannot be indulged in by the jury for purposes of finding a verdict in damages. The damages which the law contemplates, and which the act of congress provides for, must be reasonable damages ascertainable upon the evidence presented in the case. There must be facts, transactions, actual evidence of some material and pertinent character, relating to a business from which the jury can ascertain with reasonable certainty that damage has actually been worked to such business, before any

verdict in damages can be returned, other than nominal damages. It is the duty of a party, under the law applicable in this case, to use all reasonable efforts to make any damage to his business as small as possible. The plaintiffs in an action of this kind are not permitted to claim damage to their business by reason of an association contrary to the statute, where it was within their own power, in the exercise of reasonable diligence, to avert any such damage, and to avoid any consequences of injury to their business; that is to say, a party claiming damages is bound, in the exercise of reasonable diligence, to safeguard himself against any avoidable consequence of the act of another as to which he claims a right to recover damages. It is not material in this case, so far as damages are concerned, that the Columbia Encaustic Tile Company, or some other nonresident member of the association, refused at any point of time to sell tiling to the plaintiffs, if, as a matter of fact, the plaintiffs, by applying to other manufacturers of tile in the same market, whether members of the association or not, could have procured such tiles as may have been necessary in the transaction of their business at the same price. And, if there was a difference in price, the amount of the damages would be limited to such difference in price. If, therefore, you find from the evidence that at any point of time when tiles were refused the plaintiffs by the Columbia Encaustic Tile Company, or any other member of the association, there were in the market other manufacturers from whom at the same price and charges the plaintiffs could have procured such tiles as they needed, you must consider that it was their duty to apply to such manufacturers for tiles; and if they failed to use reasonable diligence in making such application, and thereby failed to provide themselves with the necessary tiles, they are not entitled to any damages by reason of the refusal of such tiles on the part of any member of the association. If the evidence in the case in the matter of damage to the business of the plaintiffs has not shown any real and substantial damage to their business by reason of the association, apart from conjecture or mere speculation, then they are not entitled to any substantial compensation, and no verdict in damages should be rendered in their favor, except a verdict for nominal damages; that is to say, a verdict in the sum of one dollar, or other trifling amount. If you believe from the evidence in this case that in the month of August, 1898, the plaintiffs ordered from the Columbia Encaustic Tile Company of Anderson, Ind., a certain lot of tiles, and said Columbia Encaustic Tile Company agreed to ship the same to them in accordance with the terms of prior agreements, and if you further believe from the evidence that, by reason of the said Columbia Encaustic Tile Company joining the Tile, Mantel & Grate Association of California, they failed and refused to ship said tiles to the plaintiffs, and broke their contract with them, you are instructed that the plaintiffs are entitled to recover, by reason of said breach of contract, the difference between what the tiles would cost them laid down in this market and the market value of the tiles in this market. And, if you find as above, you should find for the plaintiffs in whatever amount you find to be the difference between the cost of said

tiles here in San Francisco and the market value of the tiles in San Francisco.

The jury returned a verdict in favor of the plaintiffs, fixing their damages in the sum of $500.