## Commonwealth v. Purple Lines Company

*Frank E. Reed*, assistant district attorney, for Commonwealth.

*Homer H. Swaney*, for defendant.

READER, P. J., May 25, 1933.—In the above-entitled case an information was made against the defendant Purple Lines Company, before B. J. Riley, a justice

of the peace in and for Beaver County, by E. O. Zimmerman, a member of the Pennsylvania State Highway Patrol, charging said defendant with having operated a foreign motor vehicle within the Commonwealth of Pennsylvania for a period exceeding 15 days in the calendar year 1933 without having said vehicle registered under the provisions of the laws of the Commonwealth of Pennsylvania. A hearing was waived by the defendant before the justice, and the case was heard before the court of quarter sessions of this county. At the hearing in this court the district attorney and counsel for the defendant entered into a stipulation in writing which was filed with the court.

By the terms of the stipulation referred to, the offering of evidence was waived and a statement of facts was agreed upon for the consideration of the court in determining the guilt of the defendant. The guilt or innocence of the defendant, it was stipulated, should turn upon the conclusion of the court as to the validity of the Act of August 15, 1932, P. L. 47. The stipulation reads in part as follows:

"First: That the defendant operated within the County of Beaver and Commonwealth of Pennsylvania a foreign vehicle, to wit, GMC tractor, bearing Ohio registration T34-091, on the following dates, to wit: January 4th, January 5th, January 9th, January 11th, January 13th, January 14th, January 16th, January 17th, January 18th, January 23rd, January 24th, January 26th, January 27th, January 28th, February 1st, February 2nd and February 3rd, in the year 1933, which was a period exceeding 15 days in the calendar year 1933.

"Second: That said GMC tractor was not registered within the Commonwealth of Pennsylvania or any registration fee paid thereon.

"Third: That said prosecution was instituted under the provisions of subsection *b* of section 409 of the Act of Assembly of the Commonwealth of Pennsylvania approved May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, as amended by the Act of August 15, 1932, P. L. 47, which said latter amendment was adopted at an extra session of the legislature of the Commonwealth of Pennsylvania convened in extraordinary session by the Governor on June 27, 1932, by virtue of a call set forth in the pamphlet laws of said extra session of 1932, dated June 22, 1932."

It is further provided in the stipulation that the proclamation of the Governor calling said special session of the legislature, as set forth in the pamphlet laws of said special session, is by reference made a part of the stipulation. The stipulation in effect presents but one question for determination, that of the validity of said Act of August 15, 1932, P. L. 47.

The said act of assembly is entitled "An act to amend sections four hundred nine and six hundred three of the act, approved the first day of May, one thousand nine hundred twenty-nine (Pamphlet Laws, nine hundred five)," . . . as said act was last amended by the Act of June 22, 1931, P. L. 751. Subsection (*b*) of said section 409, as amended, under which the prosecution is instituted in the instant case, reads as follows:

"(b) The owner of a foreign vehicle, operated within this Commonwealth for the transportation of persons or property for compensation, either regularly according to schedule, or for a period exceeding fifteen (15) days in the calendar year, shall register such vehicle and pay the same fees therefor as are required for like vehicles owned by residents of this Commonwealth, except a foreign vehicle, owned or leased by a non-profit cooperative association, used exclusively for the transportation of agricultural products owned or belonging to the association or its members."

It is contended by the defendant that this act is not within the terms of the proclamation calling said special session of the legislature, and that it is, therefore, unconstitutional. Article III, section 25, of the Constitution of Pennsylvania reads as follows:

"When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session."

It is well settled by the decisions of our courts that legislation enacted at a special session of the legislature which is not reasonably within the terms of the call for said session made by the Governor is invalid. It is held that acts of the legislature should not be declared unconstitutional under this provision of the Constitution, or any other provision thereof, unless the legislation is clearly, strongly, and imperatively prohibited. Every presumption is in favor of the constitutionality of the acts of the legislature, and it is the duty of the courts to search for such construction of statutes as will support the legislation: Pittsburg's Petition, 217 Pa. 227; Likins's Petition (No. 1), 223 Pa. 456; Likins's Petition (No. 2), 223 Pa. 468; Com. ex rel. Schnader v. Liveright, Secretary of Welfare, et al., 308 Pa. 35.

The question for determination, therefore, is whether the provision of the Constitution hereinbefore quoted, as interpreted by the courts of the State, invalidates the act of assembly in question under which the defendant is prosecuted. As already indicated, the act of assembly is an amendment to two sections of The Vehicle Code, as the same is embraced in the Acts of May 1, 1929, P. L. 905, and June 22, 1931, P. L. 751. The Act of August 15, 1932, amends two sections of the earlier acts relating exclusively to the registration of cars belonging to nonresidents of the Commonwealth and operated within the Commonwealth for the transportation of persons or property for compensation for a period in excess of 15 days in the calendar year, and the licensing of nonresident operators operating cars within the Commonwealth for the transportation of persons or property for compensation for a period exceeding 15 days in the calendar year.

The proclamation of the Governor dated June 22, 1932, calling the special session of the legislature at which the above-mentioned act of assembly was enacted, states 14 subjects of legislation to be considered at said special session. None of said subjects expressly indicates or suggests legislation affecting motor vehicles as a subject for the consideration of the special session. It is apparent at a glance that with the exception of two objects mentioned in said call none can possibly be construed as embracing legislation of the character undertaken by the statute in question. The two objects stated in the call for the special session which might possibly be construed as embracing the act in question are the first and fifth. These read as follows:

"1. By reductions in appropriations previously made and by amendments or other modifications of existing tax laws or the imposition of new taxes, to provide money to restore, in whole or in part, nine million seven hundred twenty thousand three hundred sixty-four dollars and twenty-seven cents ($9,720,-364.27) of appropriations abated by the passage of the Talbot Act, to balance the deficiency of five million dollars ($5,000,000) in the budget for the biennium ending May 31, 1933, and to pay the expenses of the special session of the Legislature. . . .

"5. By taxation, to provide State revenue for unemployment relief and appropriate the money provided, or to initiate a constitutional amendment authorizing a State loan for reimbursing counties, cities, and poor districts for moneys expended for unemployment relief, or both. And, if a loan is proposed, to enact legislation specifying the basis upon which the State shall reimburse such counties, cities and poor districts."

As stated, the statute in question is a part of The Vehicle Code of the State. Legislation with reference to the registration of motor vehicles, the licensing of operators thereof, and the regulation of their operation has come to constitute

a distinctive and well-recognized class of legislation. It cannot easily be confused with legislation upon other subjects. Had it been intended in the call for the special session of 1932 to legislate upon this general subject, no question could have arisen in the mind of anyone familiar with the laws of this State that such purpose should be indicated in the call for the special session by a particular statement of such a purpose. The absence of any such statement in the call is very persuasive evidence that such legislation was not in contemplation. The only justification of such legislation to be found in the call is the suggestion that it may be embraced within the provisions of the first and fifth statements as being in effect revenue legislation. The effect of the provisions of the act might well be to increase the revenue of the State through the payment of registration and license fees and the collection of penalties.

It is only when considered as possibly a revenue measure that the act in question could be held to be within the provisions of the two calls indicated, which contemplate the modification of existing tax laws, or the imposition of new taxes to provide revenue for carrying out the purposes which are evidently the primary purpose of the special session of the legislature. Even if so regarded, however, it seems to us to require a straining of the intent and effect of the statute in question and of the subjects stated in the call to bring the former within the latter. We do not discuss this phase of the case further because we think there is another reason which precludes our construing the act in question as a tax or revenue statute.

The statute attempts to deal with the operation within the Commonwealth of Pennsylvania of a foreign vehicle operated within the Commonwealth for the transportation of persons or property for compensation during the period specified by the act. The terms of the act are broad enough to cover such operation of such vehicles as are engaged in interstate commerce. In fact, it is a practical certainty that a strict enforcement of the act must necessarily, in most cases, operate upon interstate commerce. So long as legislation of the State affecting interstate commerce may be held to be within the proper exercise of the police power of the State, it is valid and not in contravention of the commerce clause of the Constitution of the United States. When, however, such legislation, even though purporting to be an exercise of the police power, is actually in intent and effect a revenue measure, it is invalid as a violation of such provisions of the Constitution of the United States. The general rule is thus stated in 5 R. C. L. 702, 715:

"In the exercise of the police power, the states or their municipalities may enact statutes and ordinances to protect the public health, the public morals, the public safety, and the public convenience, that is, they may adopt any legislation or regulation for any of those purposes and relative to interstate or foreign commerce, provided such laws or ordinances are local in their character and affect interstate commerce incidentally only . . ."

"The states have no power to present any obstacle to or lay any burden upon interstate transportation, even by virtue of a provision in the charter of a carrier subjecting it to state laws, but they have power to adopt regulations respecting the transportation of persons and property, even in interstate commerce, provided the subject-matter is a proper police regulation and there is no conflict with federal regulations, though of course in case of a conflict the state law must give way."

The rules of law thus stated are recognized in the decisions of our State: City of Titusville v. Brennan, 143 Pa. 642; Sayre Borough v. Phillips, 148 Pa. 482; Chalmers v. City of Philadelphia, 250 Pa. 251.

As against foreign-owned vehicles operated within the State in the course of interstate commerce the statute in question can be held to be valid only as an

exercise of the police power, and not as revenue or tax legislation. It seems to us therefore that it cannot logically be construed as a tax or revenue measure so as to bring it within the terms of the Governor's proclamation in order to establish its validity as against the provisions of article III, section 25, of our State Constitution.

For the reasons stated we feel obliged to hold that the said Act of August 15, 1932, P. L. 47, is unconstitutional, and that a conviction of the defendant under its provisions cannot be sustained.

### Order

Now, to wit, May 25, 1933, it is hereby ordered, adjudged and decreed that the defendant in the above-entitled case, Purple Lines Company, is not guilty, that judgment in said case be arrested, and the defendant discharged.