MONARCH TOBACCO WORKS v. AMERICAN TOBACCO CO. et al.

(Circuit Court, W. D. Kentucky. December 21, 1908.)

1. MONOPOLIES (§ ·12*)—INTERSTATE TRADE—STATUTES.

Act Cong. July 2, 1890, c. 647, § 1, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), provides that every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce, is illegal, and every person who shall make any such contract, or engage in any such conspiracy, etc., on conviction shall be fined. Section 2 declares that every person who shall monopolize, or attempt to monopolize, or combine or conspire to monopolize, any part of the interstate trade or commerce, on conviction shall be punished, etc. *Held*, that such sections referred to and made illegal two different things: Section 1, combinations in restraint of interstate trade and commerce; and section 2, combinations or conspiracies to monopolize, or to attempt to monopolize, interstate trade and commerce.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

2. MONOPOLIES (§ 23*)—PRIVATE INJURIES—ACTION.

Act Cong. July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), declares that any person who shall be injured in his business or property by any other person, or corporation, by anything forbidden or declared to be unlawful by the act which prohibits combinations in restraint of interstate trade and commerce, and combinations or conspiracies to monopolize, etc., may sue therefor in any federal court in which the defendant resides or is found, and may recover threefold damages, etc. *Held,* that it is only necessary to support an action under such section that complainant's business or property has been in some way injured by reason of defendant's illegal scheme.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 16; Dec. Dig. § 23.*]

3. MONOPOLIES (§ 28*)—CONSPIRACIES TO MONOPOLIZE INTERSTATE COMMERCE—RES INTER ALIAS·ACTA.

In an action for damages to plaintiff by defendant's alleged combination to monopolize or attempt to monopolize interstate commerce in tobacco, in violation of Act Cong. July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3200), prohibiting conspiracies to monopolize or attempts to monopolize interstate commerce, defendant's acts and conduct prior to plaintiff's organization and entering the business were immaterial as res inter alios acta.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

4. MONOPOLIES (§ 28*)—CONSPIRACY TO MONOPOLIZE—CIVIL DAMAGES—PETITION—CONSTRUCTION.

Act Cong. July 2, 1890, c. 647, § 1, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prohibits combinations in restraint of interstate trade and commerce, and section 2 prohibits conspiracies to monopolize or attempts to monopolize interstate trade and commerce. Section 7 provides that any person injured by a violation of either section may sue for and recover treble damages. *Held* that, in an action brought for such damages in a

*For other cases see same ·topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

federal court sitting in Kentucky, it was not necessary that the petition should state the facts showing a right of action with the particularity of an indictment, but that it was sufficient if the facts constituting a cause of action were stated as concisely as possible consistent with clearness, as required by Civ. Code Prac. Ky. §§ 90, 115.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

5. MONOPOLIES (§ 28*)—COMBINATION OF MONOPOLIES—DAMAGES.

Where, as a result of conspiracy or combination in restraint of interstate commerce, prohibited by Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), a person is injured by being compelled to pay a higher price for any article affected thereby than he would otherwise be compelled to pay, he may recover treble the amount of the damages sustained.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

6. MONOPOLIES (§ 24*)—UNLAWFUL COMBINATIONS—RESTRAINT OF TRADE—INJUNCTION.

Combinations may be enjoined if the objects of the association are such as to violate Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prohibiting combinations in restraint of interstate commerce, and combinations and conspiracies to monopolize interstate commerce.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

7. MONOPOLIES (§ 14*)—COMBINATIONS—MANUFACTURE OF ARTICLE OF NECESSITY.

A combination, the sole object of which is to manufacture an article of common necessity, is not, without more, a violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prohibiting combinations in restraint of interstate commerce.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 11; Dec. Dig. § 14.*]

MONOPOLIES (§ 12*)—CONSPIRACIES IN RESTRAINT OF TRADE—SEPARATE ACTS.

A combination or conspiracy to monopolize or to attempt to monopolize interstate commerce, in violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), was not immune because it was carried into effect by a series of separate acts, each one of which taken alone, was not objectionable, where the direct object and result of all was the perfection of a combination agreement whereby the free flow of commerce between the states, or the liberty of the trader, was obstructed.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

9. MONOPOLIES (§ 12*)—INTERSTATE COMMERCE—RESTRAINT—EXTENT.

It is not necessary that restraint of interstate trade and commerce should be so complete as to amount to total destruction in order to constitute a violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U .S. Comp. St. 1901, p. 3200), prohibiting combinations and conspiracies in restraint of interstate trade and commerce, or to monopolize or attempt to monopolize the same.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

10. MONOPOLIES (§ 28*)—CIVIL DAMAGES—PARTIES.

Where a complaint for conspiracy to monopolize interstate trade and commerce charged all the defendants jointly with having entered each of the alleged combinations and conspiracies complained of, and all the acts were alleged to have been done pursuant to a common design, plain-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff was not required to elect because some of the defendants were charged with doing one act and others with another.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

11. DAMAGES (§ 142*)—PLEADING—SPECIFICATION.

Civ. Code Prac. Ky. § 134, provides that, if the allegations of the petition are so indefinite or uncertain that the precise nature of the claim does not appear, the court may require that it be made more definite and certain by amendment. *Held*, that under the conformity act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]) a petition for treble damages to plaintiff because of defendants' alleged unlawful combination or conspiracy to monopolize interstate commerce in violation of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), sufficiently charged general damages by an allegation that, by virtue of defendant's alleged unlawful acts, plaintiff had sustained damages in the sum of $500,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 413; Dec. Dig. § 142.*]

Helm Bruce and O'Neal & O'Neal, for plaintiffs.
Gibson, Marshall & Gibson, for American Tobacco Co.
Carroll & Middleton, for Nall & Williams Tobacco Co.
Humphrey, Davie & Humphrey, for Mengel Box Co.

EVANS, District Judge. An act to protect trade and commerce against unlawful restraints and monopolies, approved July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), provides as follows:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

It will be seen that section 1 makes every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, illegal; and that section 2 provides that every person who shall monopolize or attempt to monopolize, or combine or conspire with any person or persons to monopolize, any part of the trade or commerce among the several states, shall be deemed guilty of a misdemeanor. It is obvious that the two sections refer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

red to make illegal two different, though nearly allied, things, namely, section 1 refers to combinations in restraint of interstate trade and commerce, and section 2 refers to combinations or conspiracies to monopolize, or to attempt to monopolize, interstate trade and commerce. Prima facie these two sections deal with the criminal features of certain conduct, but section 7 gives a right of action for the recovery of damages to any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared by the act to be unlawful. The language of each of the three sections is very general, that of the seventh section in no wise detailing or limiting in terms the character of injuries for which a right to sue is given. All that is necessary to support the action is that the business or property of the plaintiff shall have been in some way injured by reason of the illegal scheme.

The petition shows that the plaintiff is a corporation which was organized in 1901, and that by the coming in of the year 1903, by the expenditure of large sums of money, it had laid the foundation for, and in fact had built up, a good trade in tobacco, which it was then selling in large quantities. The petition also contains a long, general statement as to how the defendant, the American Tobacco Company, had theretofore built itself up into a gigantic corporation with immense capital, and makes evident the fact that this was done by a series of acts and a course of conduct with which its codefendants had nothing to do, and in which the plaintiff could not have had an interest, it not then being in existence. Indeed, the pleading makes manifest the fact that such acts and conduct on the part of the American Tobacco Company were res inter alios acta. Passing all such averments by as not material nor pertinent to any cause of action in plaintiff's favor, which must depend upon the combination of the defendants, we come to those allegations of the petition which bear upon the complaint made against them and growing out of their conduct in coöperation one with the other. Stated generally, the pleading avers that after plaintiff had been organized in 1901, and had, as we have indicated, by 1903 built up a fairly good trade, the defendants combined and conspired with each other, and with various other persons unknown, in the form of a trust or otherwise to restrain trade and commerce in tobacco among the several states; and, further, that the defendants combined and conspired to monopolize, and have attempted to monopolize, trade and commerce in tobacco among the several states. Such are the charges of the plaintiff against the defendant, and in general terms they come within the language of sections 1 and 2 of the act. The petition then undertakes to specify the acts of the defendants, whereby it sustained the injuries complained of. It is alleged that in 1903 the American Tobacco Company acquired control of the Nall & Williams Tobacco Company by purchasing a large majority of its capital stock, which fact it kept secret; that the Nall & Williams Tobacco Company had theretofore been an independent concern hostile to the American Tobacco Company; and that by falsely pretending that the Nall & Williams Tobacco Company remained independent, and by other means set forth, the defendants carried out and put into operation the conspiracies and combinations alleged in the petition, and competed under false pre-

tenses with plaintiff in Indianapolis, Ind., in Minneapolis, Minn., in Cumberland, Md., and in Louisville, Ky., greatly to plaintiff's injury. Some details of these transactions in the cities named are set forth in the petition, and it is also averred that the defendant the Mengel Box Company was a party to the combinations and conspiracies referred to; that it had a contract to furnish the plaintiff with boxes for all the tobacco it put up, and that the contract contained a stipulation whereby the Mengel Box Company agreed to keep entirely secret its transactions with the plaintiff and the number of boxes plaintiff purchased, but that in order to carry out the alleged combinations and conspiracies, and to put them into operative effect, the American Tobacco Company acquired a controlling interest in the Mengel Box Company, exposed plaintiff's said secret, and, having acquired knowledge of plaintiff's affairs in this way, was enabled to materially aid in carrying into effect the conspiracies and combinations of which the plaintiff complains. The plaintiff then avers that "by the aforesaid unlawful acts of defendants, and those conspiring and combining with them, plaintiff has been injured in its business and property, and has thereby sustained damages in the sum of five hundred thousand dollars." The prayer of the petition is for the recovery against the three defendants of three times the amount of the alleged damages, namely, $1,500,000, and the costs of the suit, including a reasonable attorney's fee.

Each of the defendants has filed a general demurrer to the petition; each of them, in one form or another, has moved the court to require the plaintiff to make its allegations of "damages" more definite and certain; and the American Tobacco Company and the Mengel Box Company, insisting that two separate causes of action not affecting all of the parties defendant are set up in the petition, have, under section 83 of the Civil Code of Practice of Kentucky, moved the court to require the plaintiff to elect whether it will prosecute the action against the American Tobacco Company and the Nall & Williams Tobacco Company alone, or whether it will prosecute it against the American Tobacco Company and the Mengel Box Company alone.

### The Demurrers.

The general demurrers to the petition raise an important and interesting question, as to which, after very careful consideration, the court has not been able altogether to free itself from doubt. It goes without saying that the act should be so construed as to effectuate the purposes for which it was enacted, but the language of section 7 is very brief and very general, prescribing no limits, except the broad one that the suits it authorizes shall be for injuries which have been suffered by any person in his business or property at the hands of any person or corporation by reason of anything forbidden or declared to be unlawful by the act. As applied to this case, the statutory factors of the right to recover may be stated to be: First, that there has been a combination and conspiracy to restrain interstate trade and commerce in tobacco; second, that there has been a combination and conspiracy to monopolize, or at least to attempt to monopolize, interstate trade and commerce in tobacco; and, third, that, by reason of one or the other, or both,

of these combinations or conspiracies, the plaintiff has been injured in its business and property.

At the outset it is urged that the petition, which, it is contended, is based upon a highly penal statute, should state the facts showing a right of action with all the fullness and particularity required in an indictment charging a criminal offense. If the pecuniary penalties prescribed for any violation of the act could be recovered by the United States in a civil action instead of by indictment, as Congress might have enacted, there would be plausibility in the contention, for sections 1 and 2 are expressly penal, but it cannot be conceded that section 7 is penal in any such sense as to support the argument. It gives any individual the right to a civil action for certain injuries he may sustain, and this, like other civil actions, as to the pleadings therein, must be governed by the provisions of the Civil Code of Practice of Kentucky when the suit is brought here; and those provisions demand, not that the rules of pleading in criminal cases shall be observed, but sections 115 and 90 of the Code require that the petition must, in language "as concise as possible consistently with clearness," state "facts which constitute a cause of action." By this rule the pleading in this case must be tested.

The statute has many times been before the courts, and certain questions have been definitely settled. It has been adjudged that where, as the result of such combinations as the act makes unlawful, one is injured by being compelled to pay a higher price for any article affected thereby, he may recover triple the amount of the damages sustained. Chattanooga Foundry v Atlanta, 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241. See, also, Montague & Co. v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608. It has been settled that combinations may be enjoined by a court of equity if the objects of the association be such as violate the provisions of the act. Swift & Co. v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518. If, however, the sole object of the combination be to manufacture an article of common necessity, it has been held that that of itself is not interstate commerce, and that the act is not thereby violated. United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325. If useful, we might refer to many other cases, but for the present we content ourselves with the summary of them made by the Chief Justice in Loewe v. Lawlor, 208 U. S., at page 293, 28 Sup. Ct. 301, at page 303, 52 L. Ed. 488, when, in delivering the opinion of the court upholding the complaint in that case, he said that the conclusion rested "on many judgments of this court to the effect that the act prohibits any combination whatever to secure action which essentially obstructs the free flow of commerce between the states, or obstructs in that regard the liberty of a trader to engage in business."

The demurrer admits as true the averments of the petition, which, in the language of the act, show the existence of just such combinations and conspiracies as the act condemns. The demurrer must, therefore, be overruled unless the specified details of the acts by which the objects of the combinations and conspiracies were carried into effect obviate or destroy the force and effect of the admitted existence of the combinations themselves. The effect of this proposition, if

sound, would be that the illegal conspiracies and combinations which were entered into by the defendants gave the plaintiff no cause of action, because, though they were in fact carried into effect, it was done by a series of separate acts, each one of which, when taken alone, was within the rights of the defendant. That this, while plausible, is not sound, would seem to be indicated with sufficient clearness by what the Supreme Court said in Swift & Co. v. United States, 196 U. S., where, at page 396, 25 Sup. Ct. 279, 49 L. Ed. 518, Mr. Justice Holmes, speaking for the court, used this language:

"The scheme as a whole seems to us to be within reach of the law. The constituent elements, as we have stated them, are enough to give to the scheme a body, and, for all that we can say, to accomplish it. Moreover, whatever we may think of them separately, when we take them up as different charges they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful, and that intent can make no difference. But they are bound together as the parts of a single plan. The plan may make the parts unlawful. Aikens v. Wisconsin, 195 U. S. 194, 206, 25 Sup. Ct. 3, 49 L. Ed. 154."

In Chattanooga Foundry v. Atlanta, 203 U. S. 397, 27 Sup. Ct. 66, 51 L. Ed. 241, the same learned justice said:

"Finally, the fact that the sale was not so connected in its terms with the unlawful combination as to be unlawful, in no way contradicts the proposition that the motives and inducements to make it were so affected by the combination as to constitute a wrong."

These views were reiterated and strongly enforced in Loewe v. Lawlor, 208 U. S. 298–299, 28 Sup. Ct. 301, 52 L. Ed. 488. The reasons for the rule do not seem to lie very deep, it being conceivable that the object of every such combination could, and probably would, be consummated by acts which would be perfectly lawful if not done with the design to put the unlawful scheme into successful operation. The conspiracy and combination, though themselves unlawful, cannot injure any person either in his business or property so as to give him a cause of action under section 7, unless something be done to make the combination and conspiracy effective; but whatever is done by those engaged in the scheme or plot with the motive and intent to carry out the unlawful purpose itself becomes tainted with the illegality of the scheme, however innocent it might otherwise have been, the separate acts becoming thereby so interwoven with the unlawful scheme as to cause the injury "by reason" of the combination, within the language of section 7. It therefore seems that a series of acts, each of which may be innocent in itself, may be wrongful if the direct object, purpose, and result thereof be to carry into effect a combination agreement whereby the free flow of commerce between the states or the liberty of a trader to carry on his business be obstructed. It may be that nothing was in fact done in either one of the four cities mentioned in the petition which related in the direct sense to interstate commerce. Yet the plaintiff was engaged in interstate commerce, and if it be true that one object of the combination was to interfere unlawfully with that business, even though it were done locally, it might give him a right of recovery for the consequent injuries. Sometimes an unlawful act may be done by means that appear to be lawful, just as a lawful

act may be accomplished by means that are manifestly unlawful. It must be confessed, however, that many of the material averments of the petition are expressed in somewhat vague and general terms, making it difficult to tell what are the real elements of the injuries complained of, so as to enable us definitely to say whether the infliction of those injuries was through conduct condemned by the act. It is certain that monopoly in interstate trade and commerce respecting tobacco was not made complete, and only the attempt to create the monopoly is complained of, attempt alone being also within the act. The act does not appear to require that the restraint of interstate trade and commerce shall be so complete as to amount to total destruction. Nor, indeed, would that be essential, as injury to the business or property of the plaintiff might result although the objects of the illegal combination were only partially accomplished. It was contended that it was not unlawful merely to keep one's business affairs secret, nor for one corporation to obtain a controlling interest in another, nor merely to compete with a rival for trade and by mere competition to drive him out of business, nor to offer better terms and inducements than a rival in business offered, and we are by no means inclined to deny either of those propositions in the abstract, for neither is in terms forbidden by the act, nor, possibly, by any moral consideration; but, as we have seen, the seventh section of the act, in most general language, provides that "any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act" shall have a right to recover therefor, and the rulings of the Supreme Court to which we have called attention seem clearly to show that even lawful acts may become agencies of wrongdoing if the motive of doing those acts be to carry into effect a combination made illegal under the statute, and particularly if doing them does in fact effectuate the purposes of the unlawful scheme.

In the case of Whitwell v. Continental Tobacco Co., 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689, cited for the defendants, the plaintiff sued to recover triple damages, as plaintiff has done in this case; but the conduct of the defendant in that case consisted solely of a single course of business, and the court, holding, as we construe its opinion, that that particular course of business was not unlawful, and did not of itself constitute an unlawful combination, denied the plaintiff's right to recover. If we dissect the petition in this case so far as it gives specifications of the operations of the defendants in carrying their combinations and conspiracies into effect, and look separately at each act charged, we might conclude that at least some of them were strictly within defendants' rights, and if the plaintiff at the trial shall prove the existence of the conspiracy, then what may be the result when further testimony shall fully show the exact situation, as distinguished from what we merely assume to be true on demurrer, we cannot now undertake to determine; but as the existence of the illegal combinations and conspiracies to restrain and monopolize interstate trade and commerce in tobacco is admitted by the demurrer, we have concluded that the petition states a cause of action under the statute, and that, whatever may be the case as to each of the sep-

arate lines of conduct to which the defendants resorted in the four cities named to carry such combinations and conspiracies into effect, that conduct, when taken together, may show not only how plaintiff was injured, but the motive of the defendants in doing the things complained of. The demurrers will be overruled.

### Election.

We have no doubt that all the defendants are jointly charged with having entered into each of the alleged combinations and conspiracies complained of, and, while one is charged with doing one thing and one another, all of these acts, we think, are sufficiently alleged to have been done in pursuance of the common design, and for that reason the motions to require an election are overruled.

### Motions to Make the Petition More Definite.

In one form or another each of these motions seeks to have the plaintiff's averments as to "damages" made more definite and certain. The motions in terms all relate to the "damages," as distinguished from a statement of the injury plaintiff claims to have suffered. We conceive the injury to be one thing, and the damages resulting from the injury to be another. Section 134 of the Civil Code of Practice provides that the court may at any time, in furtherance of justice, cause or permit a petition to be amended, and, if its allegations be so indefinite or uncertain that the precise nature of the claim is not apparent, the court may require the pleading to be made definite and certain by amendment; and the practice act (section 914, Rev. St. [U. S. Comp. St. 1901; p. 684]) requires the practice, pleadings, and forms and modes of proceeding in common-law actions in the federal courts to conform as near as may be to those of the state.

As already pointed out, the petition asserts that by reason of the alleged unlawful acts of the defendants it was damaged in the sum of $500,000, and these motions are made in order that plaintiff may be required to show more definitely and in more detail the elements of the "damages" said to have been inflicted so that the defendants can know what they are to meet. The general rule is accurately stated in Section 1001 of Bates on Federal Procedure, where it is said:

"The damages are either general or special. General damages are such as naturally arise out of, or are connected with, and which the law implies or presumes to have accrued from, the injury complained of; and special damages are such as really accrued and are not implied by law, and are either superadded to general damages arising from an act injurious in itself, or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, and they must be specially alleged." Tidd's Prac. (1807) 389–400; 1 Chitty, Pl. (12th Am. Ed.) 395–399.

In Kentucky it is well settled that, if the damages claimed are such as would usually or naturally accompany or follow or be included in the results of the injuries complained of, they may be stated and claimed in general terms, but that other and further damages can neither be proved nor recovered unless expressly averred and shown. A familiar illustration of the difference between the two may be found in suits for damages for libel or slander. The damages usually or

naturally resulting from incriminating publications may be stated in general terms and proved at the trial; but if, in addition, the plaintiff had been prevented by the publication from obtaining or continuing to hold profitable employment, such result not usually following a slanderous or libelous statement, there must be a special averment showing the special injury, or otherwise damages therefor can neither be proved nor recovered in the action. The rule is entirely familiar that to entitle a plaintiff to prove special damages he must allege in his petition the facts causing them. Many other illustrations might be given, but we think it sufficient to say that in our opinion the damages claimed in the petition in this case are not special damages within the rules distinguishing them from those which may be supposed usually or naturally to flow from the conduct complained of. The plaintiff in a suit for damages for personal injuries, for example, is never required to give a bill of particulars or an analytical statement showing in detail how much one bone or one limb or one organ suffered, and what portion of the damages claimed should be apportioned and attributed to each, and this suggestion will serve to illustrate the idea of the court in this case as to specifying the elements of the damages claimed. The universal practice in Kentucky is to allege damages, when claimed as such, in general terms, in much the same way as was done by the plaintiff in the petition in this case, unless special damages are sought to be recovered. The Kentucky practice may be illogical and not the best or fairest way for giving the defendant notice of what he is to meet, but, being the rule in Kentucky, we must conform to it.

For these reasons, the motions to require the petition to be made more definite and certain as to the "damages" claimed will all be overruled.