AMERICAN STEEL CO. v. AMERICAN STEEL & WIRE CO. et al.

(District Court, D. Massachusetts. October 17, 1916.)

No. 685.

1. MONOPOLIES ⬅28—RIGHT OF ACTION FOR DAMAGES.

Where a company attempted to monopolize the manufacture and sale of coated wire nails, and as part of its plan engaged in various illegal and unfair practices, such as hindering its competitors from obtaining raw materials and the necessary machines, bribing their factory employés to disclose factory conditions and to send out defective goods, and bribing office employés to disclose the names of their customers and their contracts, and then selling to such customers below cost, a competitor attacked in these ways had a right of action for damages, under Sherman Act July 2, 1890, c. 647, 26 Stat. 209 (Comp. St. 1916, §§ 8820–8823), since, while no action lies under that act for unfair practices, damages are recoverable thereunder for monopolizing, or attempting to monopolize, and acts which are a part of the monopolizing, or attempting to monopolize, are a subject for damages.

2. MONOPOLIES ⬅28—RIGHT OF ACTION FOR DAMAGES—PERSONS LIABLE.

Where a company was engaged in a single continuing attempt to secure a monopoly of a particular business, in which attempt different parties joined successively, and by which a competitor was injured, all those joining in the unlawful attempt at different times became liable for whatever injury resulted from the tortious act in which he participated.

3. MONOPOLIES ⬅28—RIGHT OF ACTION FOR DAMAGES—PERSONS LIABLE.

A party participating in a company's attempt to monopolize a particular business need not expect to profit by his illegal conduct, in order to render him liable.

4. MONOPOLIES ⬅28—ACTIONS FOR DAMAGES—PLEADING.

In an action for damages, caused by a combination and conspiracy in restraint of the manufacture and interstate sale of coated wire nails, a count containing no description of the trade, or of the business situation to which the alleged conspiracy or combination applied, and which did not describe plaintiff's business, or that of defendant, and which contained no allegations that defendant's acts were intended to affect anybody but plaintiff, nor that they were part of any general scheme or conspiracy relating to, and affecting in any broad or substantial manner, the manufacture and sale of such nails, or that they did or could affect such manufacture and sale generally, was insufficient.

5. MONOPOLIES ⬅28—PLEADING—ESSENTIALS OF DECLARATION.

In an action against an illegal monopoly for damages under the Sherman Act, the declaration must describe the conditions in the trade in question, the alleged conspiracy or combination, and the business of plaintiff, and the effect thereon of the alleged conspiracy or combination, sufficiently so that the court can see that its acts might have affected the general conditions in the trade, and that plaintiff's business and situation were such that it might have been damaged by its conduct.

At Law. Action by the American Steel Company against the American Steel & Wire Company and others. On demurrer. Demurrer overruled as to the first count, and sustained as to the second count.

McLellan, Carney & Brickley, of Boston, Mass., for plaintiff.

Elbridge R. Anderson, of Boston, Mass., for defendant Baackes.

Samuel D. Elmore, of Boston, Mass., for defendants Ayres and J. C. Pearson Co.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORTON, District Judge. This is an action for threefold damages under the Sherman Act (26 Stat. 209). The business in question is that of manufacturing and selling coated wire nails. The first count charges a monopoly or attempted monopoly in such manufacture and sale; the second, a combination or conspiracy in restraint of trade in respect thereto. The defendants have demurred; and the question is whether the declaration states a cause of action. It covers, without the annexed exhibits, 74 closely printed pages, and I shall not attempt to restate or summarize it.

As to the first count: This count describes, as I construe it, the following business situation:

A group of men planned to obtain a monopolistic control of the manufacture and first-hand sale of wire nails. To this end, after two abortive attempts, they organized the principal defendant, the American Steel & Wire Company of New Jersey (hereinafter referred to as the Wire Company), which secured control of 75 per cent. of the entire output of such nails in the United States.

Coated wire nails are made from wire nails by a further process of manufacture, and constitute, evidently, a separate article of commerce. The Wire Company (to discuss the case first with reference to it alone and consider the other defendants later), thus producing or controlling three-quarters of all uncoated wire nails, determined to acquire a monopoly in the manufacture and first-hand sale of coated wire nails. The plan which it adopted to accomplish that result was, broadly speaking, to create such difficulties for its competitors—first, in the manufacture, and, second, in the sale, of coated wire nails—as to drive out of the business all of them with whom it was unable to come to terms.

The details of what was done in carrying out this plan varied with different competitors. On the manufacturing side, some were hindered in obtaining their raw material (nails, rods, or wire), and some in obtaining the necessary machinery; some were secretly attacked by bribing their factory employés to disclose their factory conditions, and to send out defective goods, so that their trade was lost; and various other expedients were resorted to, to make manufacture of coated wire nails by the defendant's competitors difficult or impossible. On the selling side, competitors were attacked by bribing their office employés to inform the defendant as to their customers and contracts, and then selling to these customers below cost, and by a general policy of selling below cost when competition developed, until the competitor was forced out of that market, or out of business. Other methods, which it is unnecessary to state in detail, were also used by the Wire Company to hinder and interfere with the sale of coated wire nails by its competitors.

Without particularizing further, it is enough to say that, on the allegations of the declaration, the defendant's conduct and methods were lawless and indefensible. They were adopted, not simply for the purpose of injuring or putting out of business each separate competitor on whom they were practiced, but as co-ordinated movements in a campaign having as its object the elimination of all effective competition

with the defendants in the manufacture and sale of coated wire nails. The result was that, in large and important commercial districts comprising many states, the defendants were successful, and all effective competition was destroyed. The defendants' campaign was inaugurated years before the plaintiff came into the business; but it was continued thereafter along the same lines, and in pursuance of it the plaintiff was attacked in several of the ways above mentioned, and was damaged.

[1] It is urged for the defendant that an action does not lie under the Sherman Act for unfair business practices, which of course is true. But the first count of the declaration plainly sets up a claim for damages for an illegal monopoly, or attempted monopoly, in coated wire nails; and the illegal and unfair practices are alleged only in connection therewith, and as part thereof. The thing forbidden by the statute, and for which damages may be recovered, is monopolizing or attempting to monopolize. These would usually involve—and are here alleged to have involved—many separate acts, each of which, so far as it was part of the monopolizing, or attempt to monopolize, would be forbidden, and therefore a subject for damages under the statute. The defendant had a perfect right, for instance, so far as the Sherman Act goes, to undersell the plaintiff in ordinary business competition, or for the purpose of putting the plaintiff out of business. It had no right to do so as part of a plan to drive everybody out of the trade in order to obtain a monopoly for itself, which is what is alleged. Swift v. United States, 196 U. S. 375, 396, 25 Sup. Ct. 276, 49 L. Ed. 518; Monarch Tobacco Works v. American Tobacco Co. (C. C.) 165 Fed. 774. The first count of the declaration states a cause of action against the American Steel & Wire Company of New Jersey and against Baackes, its vice president, director, and general sales manager.

There remains the further question under this count, whether it states a case against the other defendants, viz. J. C. Pearson Company, J. C. Pearson Company, Incorporated, and Frank C. Ayres. Ayres was treasurer, director, and general manager of J. C. Pearson Company; he was president of J. C. Pearson Company, Incorporated. J. C. Pearson Company, Incorporated, succeeded J. C. Pearson Company as selling agent of the Wire Company on June 30, 1913, and has since acted in that capacity. For several years before that date, the relations between the Wire Company and J. C. Pearson Company were evidently close, though it is not alleged specifically that the latter acted as agent of the former.

[2, 3] The plaintiff began business January 1, 1912, and has continued it up to the present time. During all this period the Wire Company has been carrying out its plan, as above outlined, for monopolizing, or attempted monopolizing, the manufacture and sale of coated wire nails. During the first part of the period J. C. Pearson Company knowingly and actively co-operated with and assisted the Wire Company in so doing. Since June 30, 1913, J. C. Pearson Company, Incorporated, has been doing the same sort of thing; all its stock is owned by the Wire Company. Both of the Pearson companies and

Ayres, through whom they acted, are alleged to have been engaged in an attempt, various acts in connection with which are set forth in detail, to monopolize the trade in question for the benefit of the Wire Company. There were not successive attempts by the Wire Company to secure a monopoly; there was a single continuing one, in which different parties joined successively, and by which the plaintiff was injured. Everybody who joined in the unlawful attempt became liable for whatever injury resulted from the tortious act in which he participated. United States v. Nunnemacher, 7 Bissell, 111, 123, Fed. Cas. No. 15,902; Atlantic & Pacific R. R. Co. v. Laird, 164 U. S. 393, 396, 17 Sup. Ct. 120, 41 L. Ed. 485. It is not necessary that a defendant should expect to profit by his illegal conduct in order to render him liable therefor. Commonwealth v. Harley, 7 Metc. (Mass.) 462. Whether this count can be supported, as the plaintiff contends, as alleging a conspiracy in restraint of trade, without an explicit allegation to that effect, is doubtful; but, upon the ground stated, it seems to me good against all the defendants.

As to the second count: The second count is founded upon an alleged combination and conspiracy, under the same statute (section 1), among the defendants in restraint of the manufacture and interstate sale of coated wire nails.

[4] This count omits many of what seem to me to be important allegations in the first count. It contains no description of the trade or of the business situation to which the alleged conspiracy or combination applied. It does not describe, either the business of the plaintiff, or that of the defendant. There is no allegation that the defendant's acts were intended to affect anybody but the plaintiff, nor that they were part of any general scheme or conspiracy relating to, and affecting in any broad or substantial manner, the manufacture and sale of the product in question, nor that they did or could affect generally such manufacture and sale.

[5] It is well settled that a declaration under this section must describe (a) conditions in the trade in question; (b) the alleged conspiracy or combination; and (c) the business of the plaintiff, and the effect thereon of the alleged conspiracy or combination, sufficiently, so that the court can see that the defendant's acts might have affected general conditions in the trade in question, and that the plaintiff's business and situation were such that it might have been damaged by the defendant's conduct.

Applying this test, it is clear that the second count is insufficient. The demurrer to it must be sustained.

Demurrer overruled as to first count; sustained as to second count.